PARTIDO POPULAR DEMOCRÁTICO, apelante, *v.* PEDRO ROSSELLÓ GONZÁLEZ ET ALS., apelados; PARTIDO POPULAR DEMOCRÁTICO ET ALS., demandantes, *v.* PARTIDO NUEVO PROGRESISTA ET ALS., demandados.

*Números:* AP-95-7
CT-95-10

*Resueltos:* 25 de enero de 1996

*Harry N. Padilla Martínez, Carlos Lugo Fiol, Procurador General,* y *Guillermo De Guzmán Vendrell,* abogados de la parte apelante.

## RESOLUCIÓN

A las mociones de reconsideración presentadas en el caso de epígrafe por el Hon. Pedro Rosselló González, Gobernador del Estado Libre Asociado de Puerto Rico, y el Partido Nuevo Progresista, *no ha lugar*.

El 22 de diciembre de 1995 emitimos una opinión y sentencia en los casos consolidados *P.P.D. v. Rosselló González*, AP-95-7; *Pérez Preston v. Hon. José Aponte*, AP-95-9; *P.P.D. v. P.N.P.*, CT-95-10 —*P.P.D. v. Gobernador I*, 139 D.P.R. 643 (1995)— en la cual resolvimos que los anuncios en controversia violaban la Sec. 9 del Art. VI de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1. En particular, concluimos que los anuncios impugnados constituían una campaña publicitaria concertada, de manifiesto corte político-partidista, subvencionada con fondos públicos, so pretexto de cumplir con un fin público determinado. Por este motivo dictamos el *injunction* preliminar solicitado por los demandantes y devolvimos los casos al Tribunal de Primera Instancia para la continuación de los procedimientos.

En las referidas mociones de reconsideración no se cuestiona la conclusión medular de la opinión y sentencia que declara inconstitucional el uso de fondos públicos utilizados para la publicación de los anuncios impugnados por el Partido Popular Democrático. Sus preocupaciones consisten únicamente en el alcance que *erróneamente* le atribuyen a lo expresado en el último párrafo de la pág. 704 en una interpretación que no encuentra apoyo alguno en el texto de dicha opinión. *P.P.D. v. Gobernador I*, supra.

Este Tribunal no ha expresado juicio definitivo alguno respecto a la procedencia de una compensación por daños a la parte demandante ni a los posibles remedios que, en su día, el Tribunal de Primera Instancia pueda ordenar, luego de que las partes hayan. cumplido con todos los trámites dispuestos por nuestro ordenamiento procesal vigente.

Es al Tribunal ·de Primera Instancia a quien le corresponde pasar juicio inicial sobre todos los extremos señala-

dos por los demandados en su moción de reconsideración, así como respecto a cualquier otro señalamiento, reclamo, defensa o requerimiento que las partes presenten. Por lo tanto, las partes deberán dirigirse a dicho foro en cuanto a estos extremos.

También es al foro de instancia a quien le corresponde, luego de oír a las partes y recibir prueba, de ser esta necesaria, resolver la solicitud de desestimación presentada por la Administración de Seguros Médicos y su Directora.

Lo acordó el Tribunal y certifica el señor Secretario General. La Juez Asociada Señora Naveira de Rodón emitió un voto particular de conformidad. El Juez Asociado Señor Negrón García emitió un voto concurrente. El Juez Asociado Señor Rebollo López emitió un voto particular. El Juez Asociado Señor Corrada Del Río expresa que, por las razones expuestas en su opinión disidente, reconsideraría el caso en su totalidad.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

**— O —**

Voto concurrente del Juez Asociado Señor Negrón García.

I

Reafirmamos que "[*l*]os *fondos del erario son sagrados; lo manda la Constitución y legislación.* Así lo entendieron muchos buenos servidores, que décadas atrás nos precedieron en la administración de la cosa pública. Lamentablemente, en los últimos cuatrienios, la recta y sana administración pública ha sido totalmente confundida con el manejo de lo sectario partidista. *Como correctamente concluyó el ilustrado tribunal de instancia (Hon. Arnaldo López Rodríguez, Juez), este mal proceder ha trascendido en*

*las distintas administraciones, ha hecho crisis en los últimos cuatrienios, controlados por el P.N.P. y P.P.D.; incluso dentro de la administración municipal.* Ya para el 1990, en *Noriega v. Hernández Colón,* [resuelto el 6 de abril de 1992], habíamos cuestionado esta práctica perjudicial. Dijimos: "... ¿quién le pondrá freno a esa disputa y saturación de anuncios 'públicos'?, ¿quién controlará la sangría presupuestaria? Esta aterradora visión del futuro, ¿no es más bien típica de una campaña electoral entre partidos de oposición en año eleccionario? ¿Por qué trasladarla al escenario gubernamental y gravar los fondos públicos al amparo de la cuestionable práctica de 'informar' al pueblo? Recapitulando, este tipo de campaña, impulsada para ganarse la opinión pública, abre camino a una contienda político-ideológica de mayor envergadura". (Énfasis en el original.) *P.P.D. v. Gobernador I,* 139 D.P.R. 643, 707 (1995), opinión concurrente.

## II

Es un hecho no contradicho que en su demanda el Partido Popular Democrático (en adelante P.P.D.) *no reclamó indemnización pecuniaria alguna* contra el Partido Nuevo Progresista (en adelante P.N.P.) ni la solicitó expresamente ante el Tribunal de Primera Instancia o ante este Foro apelativo. Cabe notar que sus alegaciones incorporan el concepto "daño" con el único propósito de sostener ese requisito dentro de la normativa sobre la legitimación activa. Así las partes lo discutieron y plantearon en todo momento en sus distintos alegatos.

Releída la transcripción de la prueba oral, encontramos el testimonio del perito Gilberto Torres Collazo, quien afirmó que el P.P.D. había sufrido daños, no en términos de indemnización, sino con referencia al beneficio económico que recibiría el P.N.P. de la inversión gubernamental en los anuncios que, por su volumen, le permitía obtener mejores

negociaciones y una ventaja al comenzar la campaña electoral en 1996. T.E., págs. 213–214.

En este sentido, no cabe duda de que el reconocimiento potencial de daños en la opinión mayoritaria fue *sua sponte*. Ello no significa que fuera improcedente. En nuestra opinión concurrente hicimos constar con mayor especificidad los remedios judiciales alternos de naturaleza compensatoria, según los habíamos visualizado en el pasado ante anuncios político-partidistas financiados ilegal e inconstitucionalmente con fondos públicos. *P.N.P. v. Hernández, Srio. D.T.O.P.*, 122 D.P.R. 362 (1988), y casos allí citados.

Ante este suscinto trasfondo procesal doctrinario, la resolución mayoritaria de hoy declara sin lugar la moción de reconsideración de varios funcionarios públicos del Gobierno central, el P.N.P. y el Gobernador, Hon. Pedro Rosselló González, en su carácter personal. Esa negativa reitera la facultad del tribunal de instancia, en la continuación del proceso, de pasar juicio sobre los daños al P.P.D., "así como respecto a cualquier otro señalamiento, reclamo, defensa o requerimiento que las partes presenten". Resolución, pág. 986.

Según indicado, no hay alegación alguna del P.P.D. que reclame una indemnización pecuniaria del P.N.P. En buena técnica adjudicativa, ni aun bajo la más dilatada y liberal aplicación del principio de que las alegaciones sólo tienen el propósito de informar en términos generales, podría la demanda actual configurar una causa de acción de este tipo.

Dicho de otro modo, la demanda del P.P.D., tal y como fue redactada originalmente, no aduce hechos suficientes constitutivos de una causa de acción por daños pecuniarios. Bajo este predicado cabrían dos (2) rutas procesales: *primero*, o el P.P.D. enmienda la demanda —y claro está, los demandados sus contestaciones y demás defensas o reclamos recíprocos— todo ello al amparo de la

decisión, o *segundo*, se expone a que sea desestimada, ya que se le negó la legitimación activa para pedir el remedio de restitución de fondos públicos.

## III

Es menester aclarar que la resolución mayoritaria guarda un absoluto silencio sobre el planteamiento del Procurador General en el que solicita que la decisión sólo tenga efectos prospectivos. La cuestión no es prematura. Precisamente el mandato de este Foro indefectiblemente abrió las puertas judiciales para que, en su más amplia cobertura, las partes pudieran dilucidar entre sí todos sus reclamos y defensas.

Nuestra decisión simplemente rescató y aplicó unos preceptos constitucionales vigentes desde 1952. Éstos sostienen la ilegalidad de los desembolsos de fondos públicos para financiar unas campañas publicitarias político-partidistas, en interacción con el principio igualitario en materia de financiamiento electoral expuesto prístinamente en *Marrero v. Mun. de Morovis*, 115 D.P.R. 643, 646 (1984),; *P.R.P. v. E.L.A.*, 115 D.P.R. 631, 640 (1984), y *P.P.D. v. Gobernador II*, 136 D.P.R. 916 (1994).

No estamos, pues, ante una decisión o una nueva regla jurisprudencial que permita invocar y justificar sólo su prospectividad. Sería un contransentido, por no decir una burla, que con estos claros precedentes judiciales le negáramos los efectos retroactivos. Significaría admitir que el Poder Judicial ha incurrido en un ejercicio académico y vacuo al proclamar la vigencia de. una Constitución abstracta e inoperante.

Toda campaña publicitaria de carácter políticopartidista es "una práctica perjudicial inconstitucional que inflige una lacerante herida al entretejido sociodemocrático. Procede detenerla, proscribirla mediante el remedio de *injunction*, y remitir los tres (3) casos al tribunal de instancia

para la continuación y adjudicación de los remedios procedentes". (Escolio y énfasis omitidos.) *P.P.D. v. Gobernador I*, supra, pág. 753, opinión concurrente.

— O —

Voto particular emitido por el Juez Asociado Señor Rebollo López.

El pasado 22 de diciembre de 1995 expresamos que —no obstante estar contestes en que resulta procedente la expedición de un *injunction* preliminar prohibiendo las campañas publicitarias impugnadas en los casos del epígrafe, por razón de resultar éstas violatorias de las disposiciones de la Sec. 9 del Art. VI de nuestra Constitución, L.P.R.A., Tomo 1— *disentíamos de todo lo demás*.

La resolución que hoy emite la mayoría del Tribunal, así como los distintos votos, concurrentes y de conformidad, que suscriben varios de los integrantes de esa mayoría, *son más que suficientes para poder uno percatarse del hecho de que efectivamente nos asistía la razón al disentir* "de *todo* lo demás".

La mayoría, en el día de hoy, *dice que no dijo lo que entonces dijo; que, por favor, no entendamos lo que todos entendimos que dijeron; y esto, a su vez, para que el foro de instancia proceda a hacer lo que supuestamente la Mayoría dice hoy que entonces no dijeron ni ordenaron.* Veamos.

Una lectura de la Opinión que el Tribunal emitió el pasado 22 de diciembre de 1995 (*P.P.D. v. Gobernador I*, 139 D.P.R. 643 (1995)) es todo lo que se necesita para uno darse cuenta de que en dicha ponencia la mayoría determinó, *de manera prematura y errónea*, que el demandante Partido Popular Democrático había sufrido un "daño especial", recobrable en forma monetaria, en relación con el cual no sólo dicha parte demandante no presentó prueba alguna, sino que ni tan siquiera lo alegó ni reclamó en la demanda que dicha parte radicara en el Caso Núm. CT-95-10.

Esta acción del Tribunal, *naturalmente*, contraviene el principio rector en nuestro ordenamiento jurídico a los efectos de que nuestro sistema de derecho es uno "rogado", donde aquel que reclama un daño debe alegarlo y probarlo. Véanse: Regla 10(B) de Evidencia, 32 L.P.R.A. Ap. IV; *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 D.P.R. 527, 531 (1981). Ello, *con más razón*, en el presente caso donde el "daño" reconocido por la mayoría es uno "especial". A esos efectos, la Regla 7.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que cuando se reclaman "daños especiales", se tendrá que detallar el concepto de las distintas partidas. Véase, en adición, *Díaz v. Marshak Auto Dist., Inc.*, 95 D.P.R. 690 (1968).

La mayoría, con el aparente propósito de asegurarse de que el foro de instancia "entendiera" bien este asunto de la concesión de los daños especiales al demandante Partido Popular Democrático —daños que, repetimos, no fueron reclamados por dicha parte— fue aun más lejos el pasado 22 de diciembre de 1995. En la parte dispositiva de la opinión que entonces emitiera expresó, en lo pertinente, que le reconocía, además, al foro de instancia la facultad

> ... para ordenar cualquier otro remedio que en derecho proceda, *incluso la compensación de los daños sufridos por la parte demandante*, todo ello después de dar oportunidad a la parte demandada de ser oída y presentar sus defensas. (Énfasis en el original suprimido y énfasis suplido.) *P.P.D. v. Gobernador I*, ante, pág. 704.

Hoy, aparentemente conscientes del grave error cometido, expresa dicha mayoría que:

> Este Tribunal no ha expresado juicio definitivo alguno respecto a la procedencia de una compensación por daños a la parte demandada ni a los posibles remedios que, en su día, el Tribunal de Primera Instancia pueda ordenar, luego de que las partes hayan cumplido con todos los trámites dispuestos por nuestro ordenamiento procesal vigente. Resolución, pág. 985.

¿En que quedamos? ¿Qué propósito tuvieron las expre-

siones que a esos efectos se hicieron el 22 de diciembre de 1995? La historia nos lo dirá.

## II

"Al buen entendedor, con pocas palabras le basta". Esto es, estamos plenamente conscientes del hecho de que al recibo del mandato por el foro de instancia, la parte demandante, ni corta ni perezosa, procederá a enmendar la demanda que radicara con el propósito de reclamar los "daños especiales" que, tan gentil y amablemente, le ha reconocido el Tribunal "prematuramente".

*Procede, entonces, que nos preguntemos si realmente resulta procedente en derecho la "concesión" de estos "daños especiales"*; ello con el propósito de determinar si verdaderamente resulta necesario, y procedente en derecho, devolver el caso al foro de instancia para la dilucidación de la cuestión de "daños".[1] Contestamos en la negativa; veamos por qué.

En específico en cuanto al Caso Núm. CT-95-10 resulta mandatoria la conclusión —al igual que lo resolvió el Tribunal respecto al Caso Núm. AP-95-7— de que el demandante Partido Popular Democrático *no* tiene "legitimación activa" para reclamar los fondos gastados en las campañas publicitarias impugnadas. Ello, llana y sencillamente, por razón de que no existe una conexión entre el remedio solicitado y el alegado daño sufrido por los demandantes, ya que el dinero mal gastado en dichas campañas pertenece al Estado y no al Partido Popular Democrático.

En segundo lugar, en nuestra humilde opinión, el "daño", si alguno, sufrido por el Partido Popular Democrático, como consecuencia de la campaña publicitaria en con-

---

[1] En nuestra opinión, y por las razones que expondremos, procede devolver los casos al foro de instancia para que éste, *únicamente*, dilucide si procede, o no, la expedición de un *injunction* permanente.

troversia, es uno de carácter político, el cual, en este momento y posiblemente hasta que se celebren las elecciones generales en el mes de noviembre de 1996, *resulta ser de carácter abstracto o hipotético*; razón por la cual realmente *no* puede ser cuantificado por un tribunal de justicia. Dicho de otra forma, *no* es posible saber ni determinar en estos momentos si esos anuncios realmente han perjudicado las posibilidades de triunfo del Partido Popular Democrático en las mencionadas elecciones generales.

Resulta completamente factible la posibilidad de que el ciudadano, común y corriente, rechace enérgicamente la práctica de utilizar fondos públicos en dichas campañas y decida votar, en las elecciones generales, precisamente por el Partido Popular Democrático, en cuya situación éste *no* habría sufrido "daño político" alguno. Tampoco resulta demostrativo del posible daño sufrido por dicho demandante el hecho de que las encuestas, contemporáneas a dicha campaña publicitaria, puedan haber arrojado resultados negativos para dicho partido político. Ello se puede deber a diversidad de factores, incluyendo el hecho de que los diferentes candidatos a puestos electivos del Partido Popular Democrático puedan *no* ser los mejores y más atractivos al electorado. En última instancia, y aun asumiendo que dicho partido demandante pueda probar que sufrió un daño político, tal como la pérdida de las elecciones generales, habrá que preguntarse si dicho hecho no se habrá debido a otros factores.

Dicho argumento, naturalmente, resulta aplicable a cualesquiera de los demandados en el pleito y es de por sí suficiente para disponer de la controversia, sobre "daños", en forma definitiva en cuanto a *todos* los demandados. Ahora bien, *y en específico en cuanto al Señor Gobernador de Puerto Rico y al Partido Nuevo Progresista* (en adelante P.N.P.), no puede enfatizarse lo suficiente el hecho de que las partes, a nivel de instancia, *estipularon que la producción y pago de los anuncios gubernamentales impugnados*

*fueron realizados exclusivamente por las distintas agencias
del Gobierno, aquí demandadas.*

Cabe preguntarse, ¿cómo es posible que ahora el Partido
Popular Democrático pueda enmendar su demanda para
alegar que el doctor Rosselló González es el responsable de
dicha campaña publicitaria, razón por la cual viene obli-
gado a responder ante los demandantes? ¿Debe permitír-
sele a un demandante que *reniegue* de la prueba *volunta-
riamente* ya estipulada por él?

Por otro lado, y en cuanto a la posible responsabilidad
del P.N.P., el hecho de que el doctor Rosselló González sea,
a la misma vez, el Primer Ejecutivo del país y el Presidente
del P.N.P. tiene, realmente, poca relevancia. A nuestro ma-
nera de ver las cosas, constituiría un absurdo pretender
penalizar al partido político por las acciones, *de carácter
gubernamental*, de su Presidente. De así resolver, el foro
judicial caería en el absurdo de penalizar al P.N.P. por to-
das las acciones del Primer Ejecutivo del país y, de igual
forma, a la inversa; esto es, tendríamos que penalizar al
Estado por toda acción del P.N.P., todo ello por tener de
"jefe" a la misma persona.

Resulta procedente, en consecuencia, la *desestimación*
de la demanda radicada, en el Caso Núm. CT-95-10, tanto
contra el doctor Rosselló González como contra el P.N.P.

En referencia a la moción de desestimación presentada
por la Administración de Seguros de Salud y su entonces
Directora Ejecutiva, Dra. Magali Maldonado de Oms, so-
mos del criterio que procede *desestimar* la causa de acción
contra ellos ya que de la prueba presentada por la parte
demandante en ningún momento estableció que ASES y/o
su Directora Ejecutiva incurrieran en gasto, expendio o
utilización de fondos públicos para pagar los anuncios que
llevan su logo u otros sometidos en evidencia. Más aún, la
prueba presentada ante el tribunal de instancia y ante este
Foro, sugiere todo lo contrario; que quien pagó por dichos
anuncios fue el Departamento de Salud, entidad aparte y

separada de ASES. Es menester señalar que esta prueba o estipulación nunca fue aclarada o refutada por prueba adicional por la parte demandante recurrente. Véanse: Regla 10(B) de Evidencia, 32 L.P.R.A. Ap. IV; *Asoc. Auténtica Empl. v. Municipio de Bayamón*, ante.

En relación con la acción en "daños" radicada contra los secretarios o jefes de las agencias del Gobierno, *demandados en su carácter personal*, resulta igualmente procedente en derecho decretar la *desestimación* de la demanda contra éstos. Ello en vista del hecho de que a dichos funcionarios le cobija la doctrina de "inmunidad cualificada".

Esta doctrina establece que un funcionario no responde personalmente por reclamaciones relativas a alegadas violaciones constitucionales, a menos que la norma violada haya estado claramente establecida. *Harlow v. Fitzgerald*, 457 U.S. 800, 821 (1982);[2] *De Paz Lisk v. Aponte Roque*, 124 D.P.R. 472, 495 (1989).[3] Recientemente, en *Anderson v. Creighton*, 483 U.S. 635 (1987), el Tribunal Supremo federal determinó que un funcionario que realiza funciones discrecionales puede invocar la defensa de "inmunidad condicionada", en casos en que se le reclamen daños y perjuicios, siempre que se determine que la conducta del fun-

---

[2] A esos efectos el Tribunal Supremo federal expresó:

"Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." (Escolios omitidos.) *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[3] Con anterioridad al caso de *Harlow v. Fitzgerald*, ante, supra, un oficial no podía reclamar la inmunidad cualificada a menos que cumpliera con dos (2) escrutinios: objetivo y subjetivo. El escrutinio objetivo denegaba inmunidad por violaciones de carácter negligente de derechos claramente establecidos. El escrutinio subjetivo denegaba inmunidad a un oficial si éste actuaba con malicia a pesar de que el derecho al momento del acto no estuviese claramente establecido. *Harlow v. Fitzgerald*, ante, obvió el escrutinio subjetivo, estableciendo que un oficial que viola un derecho que no estaba claramente establecido al momento de la actuación sería inmune por responsabilidad por daños de carácter civil —no criminal— independientemente de si el acto fue con malicia o con conocimiento de que se estaba violando la ley.

cionario, que sirve de base a la reclamación en daños, fue una que el funcionario entendía era legal.

A esos efectos, no podemos obviar el hecho de que la acción impugnada en este caso, y llevada a cabo por los aquí demandados, fue realizada en su carácter oficial como funcionarios del Gobierno de Puerto Rico, *hasta cierto punto confiando en previos dictámenes de este Tribunal.* Meramente a manera de ejemplo, debe recordarse que este Foro había anteriormente autorizado el desembolso de fondos públicos para el pago de anuncios gubernamentales. Véase *Noriega v. Hernández Colón*, 126 D.P.R. 42 (1990).[4] Más aún, en *C.E.E. v. Depto. de Estado*, 134 D.P.R. 927 (1993), este Tribunal reconoció que, referente a la propaganda por parte del Estado, éste "tiene amplísimos poderes". En adición, la acción, hoy declarada inconstitucional por este Foro, es una práctica de muchos años donde se publicaban anuncios de argumentable corte político-partidista y que destacaban logros o programas de los incumbentes, creándose con ello confianza en la mencionada práctica.

En cuanto a este aspecto, deben recordarse las palabras del Juez Asociado Señor Hernández Denton —expresadas en la opinión de *conformidad* que emitiera en el *presente caso* el pasado 22 de diciembre de 1995— a los efectos de que:

> Los tres (3) recursos ante nuestra consideración *son los primeros* que expide esta Curia en que se cuestiona la legalidad de unas campañas masivas de anuncios del gobierno central ....
> *Nunca antes habíamos tenido ante nuestra consideración una controversia análoga.* Aunque en cuatrienios anteriores otros

---

[4] En dicho caso, el Juez Asociado Señor Hernández Denton, en una opinión concurrente, expresó que:

"Al amparo de sus poderes inherentes, el Gobernador tiene la facultad y el deber de informar sobre las medidas que ha tomado y los planes concebidos para atender los problemas del país." *Noriega v. Hernández Colón*, 126 D.P.R. 42, 56 (1990).

En el mismo caso, el Juez suscribiente expresó:

"La sabiduría y propiedad de las gestiones realizadas por el Ejecutivo en relación con la referida campaña publicitaria necesariamente tendrá que ser juzgada en otro foro que no sea el judicial." *Noriega v. Hernández Colón*, ante, pág. 51.

incumbentes también habían utilizado los medios de comunicación comerciales para anunciar sus logros, esta es la primera vez que unos partidos de oposición, tanto en el nivel municipal como en el central, cuestionan este tipo de campaña gubernamental multimillonaria durante el período preelectoral. (Énfasis suplido.) *P.P.D. v. Gobernador I*, ante, pág. 755.

Siendo ello así, esto es, *no* existiendo precedentes que hubieren resuelto lo contrario, *no* debe haber la menor duda de que *nunca* se podrá alegar, *ni* sostener jurídicamente, que estos funcionarios no actuaron de otra forma que *no* fuera de buena fe y convencidos de que así podían hacerlo.

Más importante aún, en cuanto a este punto de la inmunidad de los funcionarios demandados, resulta ser el hecho de que este Tribunal ha reconocido *la existencia en nuestra jurisdicción* de la doctrina de la "inmunidad cualificada" en relación con aquellos funcionarios ejecutivos que descansan en un estado de derecho que consideran válido. Véase *De Paz Lisk v. Aponte Roque*, ante.

En el mencionado caso de *De Paz Lisk v. Aponte Roque*, ante, pág. 495, y refiriéndose, en específico, a las disposiciones de la Ley Núm. 9 de 26 de noviembre de 1975 (32 L.P.R.A. sec. 3085) este Tribunal expresó:

> No cabe duda de que *como cuestión de política pública* es menester que *los servidores públicos estén protegidos contra demandas presentadas en su contra* por el hecho de haber ejercido *de forma razonable y de buena fe* funciones que contienen un elemento de discreción. Se persigue que estos funcionarios *actúen con libertad* y tomen decisiones *sin* sentir presiones y amenazas contra sus patrimonios. La Ley Núm. 9, *supra*, responde a esta preocupación. (Énfasis en el original suprimido y énfasis suplido.)

Con mayor razón en el presente caso, donde no ha habido alegación alguna a los efectos de que los funcionarios públicos actuaron con malicia o con conocimiento de que se estaba violando la ley. Véase *De Paz Lisk v. Aponte Roque*, ante.

## III

Por otro lado, somos del criterio —al igual que lo plantean los demandados en sus respectivas mociones de reconsideración— que la norma establecida por el Tribunal en la decisión que se emitiera el 22 de diciembre de 1995 *debe tener carácter, o efectos, prospectivos.*

Tan recientemente como el 2 de noviembre de 1995, en *Quiles Rodríguez v. Supte. Policía,* 139 D.P.R. 272, 277 (1995), este Tribunal, al enfrentarse a la controversia de la aplicación retroactiva o prospectiva de una norma judicial, expresó que:

> Una decisión judicial puede tener tanto efecto retroactivo como prospectivo. Esto por razón de que "la absoluta retroactividad sería la muerte de la seguridad y la ... confianza pública, y la absoluta irretroactividad sería la muerte del desenvolvimiento del derecho". R. Calderón Jiménez, *Retroactividad o prospectividad de las decisiones de los tribunales,* 53 (Núms. 2–3) Rev. C. Abo. P.R. 107, 115 (1992).
>
> Hemos establecido ya que son los tribunales mismos los llamados a determinar si una decisión judicial se aplicará o no de manera retroactiva. En el ejercicio de esta discreción, son fundamentales las consideraciones de política pública y orden social, puesto que nuestro norte debe ser "conceder remedios justos y equitativos que respondan a la mejor convivencia social". *Gorbea Vallés v. Registrador,* 131 D.P.R. 10 (1992).
>
> *Anteriormente hemos reconocido como criterios rectores al momento de declarar la retroactividad o prospectividad de una norma jurisprudencial, los siguientes*: (1) el propósito que persigue la nueva regla a los fines de determinar si su retroactividad lo adelanta; (2) la confianza que se depositó en la antigua norma, y, (3) el efecto de la nueva regla en la administración de la justicia. Ello no obstante, la determinación última descansará en las consideraciones de índole social, a la luz de los hechos y las circunstancias particulares de cada caso. *Gorbea Vallés v. Registrador,* supra; *Pueblo v. Báez Cintrón,* 102 D.P.R. 30 (1974); *Pueblo v. Cruz Jiménez,* 99 D.P.R. 565 (1971). (Énfasis suplido.)

El criterio para seleccionar una u otra alternativa muchas veces es *ad hoc*, dependiendo de la situación fáctica, circunstancial del caso en particular y de consideraciones

de equidad y hermenéutica. *Gorbea Vallés v. Registrador*, ante. Consideraciones de índole social igualmente juegan un papel importante en esta determinación.([5]) Íd.

Somos del criterio que, si aplicamos los criterios esbozados en *Quiles Rodríguez v. Supte. Policía*, ante, al presente caso, *procede la determinación de prospectividad reclamada por la parte demandada*. En el presente caso este Tribunal estableció, *por primera vez*, unas normas para regular la divulgación de información por parte del Estado, a la luz de los preceptos constitucionales esbozados en el Art. VI, Sec. 9 de la Constitución de Puerto Rico, ante.

Repetimos, *nuevamente*, las palabras del Juez Asociado Señor Hernández Denton, en su opinión de conformidad en el caso de epígrafe el 22 de diciembre de 1995, a los efectos de que:

> Los tres (3) recursos ante nuestra consideración *son los primeros* que expide esta Curia en que se cuestiona la legalidad de unas campañas masivas de anuncios del gobierno central ....
> *Nunca antes habíamos tenido ante nuestra consideración una controversia análoga.* Aunque en cuatrienios anteriores otros incumbentes también habían utilizado los medios de comunicación comerciales para anunciar sus logros, esta es la primera vez que unos partidos de oposición, tanto en el nivel municipal como en el central, cuestionan este tipo de campaña gubernamental multimillonaria durante el período preelectoral. (Énfasis suplido.) *P.P.D. v. Gobernador I*, ante, pág. 755.

Igualmente recordamos, *y repetimos nuevamente*, que este Tribunal, *en el pasado*, había sido muy condescendiente en esta clase de casos. Véanse: *Noriega v. Hernández Colón*, ante; *C.E.E. v. Depto. de Estado*, ante. En fin, existen razones de más para decretar que la *nueva* norma establecida tenga efectos prospectivos.

---

([5]) En la jurisdicción federal, para que una decisión en un caso civil sea aplicada prospectivamente, la misma debe establecer un nuevo principio de derecho, ya sea mediante la revocación de claros precedentes, o al decidir por primera vez una controversia que no era claramente predecible. Deben, en adición, sopesarse los méritos y deméritos de cada caso, tomando en consideración el historial, propósitos, efectos de la nueva regla y, por último, debe considerarse la inequidad resultante de una aplicación retroactiva. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106 (1971).

## IV

Por último, deseamos dejar constancia que, en armonía con lo antes expuesto, *suscribimos* la acción mayoritaria de relevar al Alcalde de Carolina, en el Caso Núm. AP-95-9, de tener que remover los anuncios declarados ilegales con fondos pertenecientes a su propio peculio. Por los fundamentos antes expresados, resulta completamente erróneo el que así se le exija.

— O —

Voto particular de conformidad emitido por la Juez Asociada Señora Naveira de Rodón.

Ante la confusión que reflejan las distintas mociones de reconsideración presentadas por las partes demandadas en los casos consolidados *Partido Popular Democrático et al. v. Partido Nuevo Progresista et al.*, Núm. CT-95-10, y *Lcdo. Max Pérez Preston y otros v. José E. Aponte y otros*, Núm. AP-95-9, sobre el alcance de la opinión que emitiera este Tribunal el 22 de diciembre de 1995, he creído conveniente expresarme sobre lo que entiendo que resuelve la opinión; razón por la cual voté conforme con ésta. *P.P.D. v. Gobernador I*, 139 D.P.R. 643 (1995).

## I

*Partido Popular Democrático, et al. v. Partido Nuevo Progresista, et al.*, CT-95-10

A. *Moción de reconsideración presentada por el Hon. Procurador General*

Me refiero primero a la moción de reconsideración presentada por el Hon. Procurador General en *Partido Popular Democrático et al. v. Partido Nuevo Progresista et al.*,

Núm. CT-95-10, en representación de los codemandados Hon. Pedro Rosselló González, como Gobernador del Estado Libre Asociado de Puerto Rico en su capacidad oficial, Hon. Carmen Feliciano de Melecio, Hon. Carlos I. Pesquera, Hon. Pedro Rosario Urdaz, Hon. Jorge Aponte, Hon. Víctor Fajardo, Hon. Luis Fortuño, Hon. César Almodóvar y Hon. Carmen Rodríguez, en sus capacidades personales y oficiales, el Departamento de Salud, el Departamento de Transportación y Obras Públicas, el Departamento de Educación, el Departamento de Desarrollo Económico y Comercio, el Departamento del Trabajo y Recursos Humanos, el Departamento de Hacienda y el Departamento de la Familia.

Primero que nada, creo importante señalar que en la moción de reconsideración los demandados no cuestionan la corrección de la cuestión medular de nuestra opinión, el pronunciamiento de inconstitucionalidad del uso de fondos públicos para sufragar los gastos de la campaña publicitaria que fue objeto de impugnación. No piden que se reconsidere la interpretación que se hace en la opinión sobre el alcance de la Sec. 9 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, con relación a la limitación del uso de fondos públicos sólo para fines públicos. En su moción los demandados se limitan a cuestionar lo que entendieron que fue una determinación de la procedencia de la compensación de daños a la parte demandada y argumentan en favor de la aplicación prospectiva de nuestra opinión.

Dejando aclarado el alcance de la reconsideración presentada por el Partido Nuevo Progresista, el Hon. Gobernador Pedro Rosselló González y los funcionarios codemandados, pasaré ahora a considerar y analizar los planteamientos del Hon. Procurador General.

La moción de reconsideración presentada denota una gran preocupación sobre el alcance de lo que expresamos en la opinión, en específico la última oración del párrafo:

Se ordenará, además, la devolución de este caso al Tribunal de Primera Instancia para la continuación de los procedimientos todavía pendientes en forma compatible con lo aquí resuelto. Reconocemos que el foro de instancia tiene facultad, a base de la evidencia que se le presente, para extender permanentemente el *injunction* preliminar que hemos dictado, incluso la facultad de prohibir permanentemente cualquier actuación, conducta, campaña o actividad de parte de los demandados que haya sido llevada a cabo o se lleve en el futuro, en violación de las normas expuestas en esta opinión. *Igualmente se reconoce la facultad de dicho tribunal para ordenar cualquier otro remedio que en derecho proceda, incluso la compensación de los daños sufridos por la parte demandante, todo ello después de dar oportunidad a la parte demandada de ser oída y presentar sus defensas.* (Énfasis en el original suprimido y énfasis suplido.) *P.P.D. v. Gobernador I*, supra, pág. 704.

Entiende el Hon. Procurador General que mediante lo allí dispuesto le hemos concedido "autorización" al foro de instancia "para ordenar cualquier remedio distinto al interdicto permanente, así como la compensación en daños". Moción de reconsideración del Procurador General, pág. 5. Sostiene que este derecho es improcedente, ya que la parte demandante no solicitó daños y, por lo tanto, "la orden del Tribunal tiene el efecto de enmendar unilateralmente los reclamos del Partido Popular" (Íd., pág. 7); que estos daños son del tipo especial, por lo que la parte que los reclama tiene que alegarlos específicamente en la demanda, cosa que no hicieron los demandantes, Regla 7.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y que la sentencia que emitió el interdicto preliminar "como cuestión de derecho lleva implícito, que el Partido Popular estaba sufriendo un daño irreparable". Íd., pág. 8. La interpretación que hace el Hon. Procurador General no me parece ni correcta ni acertada.

La postura procesal bifucarda del caso de autos, cuando se solicitó el recurso de certificación, hizo necesario que para poder tener ante nuestra consideración el caso completo, tuviéramos que acoger la solicitud de certificación del incidente que se encontraba ante el Tribunal de Cir-

cuito de Apelaciones y, a la misma vez, expidiéramos *motu proprio* la certificación del resto del caso que aún se encontraba ante el Tribunal de Primera Instancia. Al acoger la certificación solicitada del incidente que se encontraba ante el Tribunal de Circuito de Apelaciones para ser revisado y expedir *motu proprio* la certificación del resto del caso que se encontraba ante el Tribunal de Primera Instancia, tuvimos ante nuestra consideración una situación mixta de derecho procesal surgida en un mismo caso que puede haber contribuido a la confusión que reflejan los planteamientos del Hon. Procurador General.

En lo que respecta al incidente certificado del Tribunal de Circuito de Apelaciones, actuamos bajo nuestra facultad revisora al resolver el planteamiento de legitimación activa. Sin embargo, nuestra posición frente al caso certificado del Tribunal de Primera Instancia fue bien distinta. En esta fase estábamos actuando como foro con jurisdicción original, y nuestra responsabilidad era dual. Además de pautar el derecho para establecer las normas aplicables e interpretar las disposiciones constitucionales pertinentes, también debíamos determinar si procedía o no emitir el *injunction* preliminar y, de llegar a la conclusión de que éste procedía, emitirlo.

Debido a que los procedimientos en el foro de instancia habían sido paralizados mediante una orden al efecto emitida por el Tribunal de Circuito de Apelaciones, no contábamos con determinaciones de hecho sobre la cuestión planteada. Esto hizo necesario que ordenáramos al foro de instancia, en virtud de lo dispuesto en la Regla 25(c) de nuestro Reglamento, 4 L.P.R.A. Ap. XXI, celebrar vista evidenciaria relacionada con el *injunction* preliminar, hacer las determinaciones de hecho pertinentes y sometérnoslas.

El foro de instancia, a pesar de nuestras claras y explícitas instrucciones, se excedió de la jurisdicción limitada que le habíamos delegado. Se trataba de un recurso de cer-

tificación que al expedirse privó a dicho foro de su jurisdicción sobre el caso; ya que éste pasó, *en su totalidad*, a nuestra atención. Sin embargo, el foro de instancia, después de celebrar la vista ordenada, sin autoridad o facultad para ello, procedió a declarar inconstitucional el uso de fondos públicos para sufragar los gastos de publicidad que se cuestionaban y emitir un *injunction* preliminar.

Ante estas circunstancias, y frente a la confusión que parecía existir con respecto a la modalidad del auto de certificación del Tribunal de Primera Instancia directo al Tribunal Supremo, Art. 3.002(j) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 21i(j)), creímos conveniente, al devolver el caso al foro de instancia, hacer constar claramente que ahora sí le estábamos remitiendo el caso, para que dicho foro asumiese plena jurisdicción sobre éste.

Cabe señalar que este Foro no tiene que otorgarle facultad al tribunal de instancia para que en un caso que le hemos devuelto para que continúen los procedimientos, y que, por lo tanto, se encuentra *totalmente* ante su consideración, "a base de la evidencia que se le presente, ...[extienda] permanentemente el *injunction* preliminar que hemos [el Tribunal Supremo] dictado ...". (Énfasis suprimido.) *P.P.D. v. Gobernador I*, supra, pág. 704. Tampoco tenemos que otorgarle facultad y autorizar a dicho tribunal para que pueda "ordenar cualquier otro remedio que en derecho proceda ...". (Énfasis suprimido.) Íd. Éstas son facultades inherentes de todo tribunal de instancia, con respecto a cualquier caso sobre el cual tenga jurisdicción y que se encuentre totalmente ante su consideración.

Resulta importante tener presente que, aunque el nuestro es un sistema adversativo de derecho rogado, un tribunal no tiene que conceder lo que se le pide; su deber es conceder sólo lo que en derecho proceda. El hecho de que, a manera de ejemplo, expresáramos que, *si procedía en derecho*, se podía conceder una compensación por los daños su-

fridos por la parte demandante, en modo alguno significaba que estábamos prejuzgando la procedencia de dichos daños ni abrogando todas las normas procesales y sustantivas atinentes a este tipo de reclamación. Al votar conforme con la opinión del Tribunal, entendí que lo que se estaba haciendo era indicarle al foro de instancia que ahora, en esta ocasión, sí se le estaba devolviendo el caso en su totalidad y que, por ende, ahora sí tenía la jurisdicción para resolverlo y otorgarle a las partes los remedios que en derecho entendiera que procedían, a tenor con lo dispuesto en las reglas procesales y el derecho sustantivo. Entendí, además, que no habíamos adelantado criterio alguno sobre si en este caso en específico procede la compensación por daños a la parte demandante. En la vista oral que fue celebrada el 8 de diciembre de 1995, preocupados precisamente por las consecuencias que en un caso de esta naturaleza pudiera tener la posible solicitud y concesión de daños a la parte demandante al devolverse el caso a instancia, tratamos de auscultar este planteamiento y obtener la opinión orientadora de los abogados de las partes sobre el particular. Desgraciadamente, fue muy poco lo que nos ilustraron sobre lo que ahora resulta ser eje central de su preocupación.

La moción de reconsideración del Hon. Procurador General también hace hincapié en que por la naturaleza del caso y el impacto que éste tendrá en diversas áreas, nuestra decisión debe ser de aplicación prospectiva, y no aplicable al caso de autos. Considera que de no ser así, tendrá graves consecuencias para el país. Estima, en síntesis, que siendo la primera vez que este Tribunal enuncia una regla sobre la divulgación de información por parte del Estado frente a los partidos políticos y fondos públicos, y que los funcionarios demandados y las partes que con ellos contrataron confiaron en lo que hasta ese momento había sido la práctica, la aplicación de la nueva regla sobre divulgación debe ser prospectiva y no aplicable al caso de autos. Hace

gran énfasis en el hecho de que siendo éste un año de elecciones, conceder una compensación por daños podría afectar la campaña electoral al restarle capacidad económica a uno de los partidos principales, el Partido Nuevo Progresista, para divulgar su programa de gobierno.

Con respecto a la aplicación prospectiva y no aplicación al caso de autos de nuestra opinión, en cuanto a los posibles daños ocasionados a los demandantes, creo, según ya he señalado, que el planteamiento es prematuro, pues la cuestión base, de si en este caso procede o no su concesión, aún no ha sido resuelta.

Ahora bien, aunque en la reconsideración no se discute específicamente nuestra orden en el *injunction* preliminar que prohibía el "desembolso de fondos públicos para el pago de las publicaciones *hechas* de tales anuncios o que, en lo sucesivo, se hagan en violación a la referida orden de *injunction, hasta tanto otra cosa se disponga finalmente en este caso"*, (énfasis en el original suprimido y énfasis suplido) *P.P.D. v. Gobernador I*, supra, pág. 704, entiendo que parte de los argumentos sobre retroactividad van dirigidos a esta parte de nuestra orden en el *injunction* preliminar.

En la vista oral que fue celebrada el 8 de diciembre de 1995 también tratamos que los abogados de las partes nos ilustraran sobre este particular. Específicamente, le preguntamos al Hon. Procurador General si aún había cuentas sin pagar y desembolsos por hacerse con respecto a la campaña publicitaria que era objeto de nuestra consideración. Se nos contestó que creían que no, que ya todos los pagos se habían hecho.

Para entender el alcance de la prohibición sobre desembolsos de fondos públicos, tenemos que poner nuevamente en perspectiva y ubicar procesalmente dicho pronunciamiento. Todo lo que hemos hecho es determinar que *hasta tanto el caso no se resuelva en los méritos*, y como medida preventiva, no se permitirá el desembolso de fon-

dos públicos para el pago de las publicaciones ya hechas o las que se hagan en el futuro en violación de la prohibición específica contenida en el *injunction* preliminar. La cuestión de si esta prohibición debe ser permanente o si se deben permitir estos pagos no ha sido resuelta en definitiva. Ante estas circunstancias, los planteamientos que sobre este particular se hagan sobre la aplicación prospectiva y no aplicación al caso de autos de nuestra opinión, al igual que lo que he señalado en cuanto a la concesión de daños a los demandantes, son prematuros.

Ante el foro de instancia y en relación con todos estos planteamientos, las partes podrán aducir todas las defensas procesales y sustantivas que estimen pertinentes y el tribunal los resolverá y concederá lo que en derecho proceda. Cualquier determinación estará sujeta a los trámites de revisión establecidos en la Ley de la Judicatura de Puerto Rico de 1994, según enmendada.

En conclusión, por entender que nada se ha provisto, ordenado, determinado o resuelto sobre la procedencia de la compensación por daños a la parte demandante y que, en cuanto a la prohibición de desembolso de fondos públicos, nuestra orden al ser un *injunction* preliminar no es definitiva ni prejuzga la determinación final sobre este asunto. Resulta prematuro cualquier planteamiento relacionado con la aplicación prospectiva de nuestra opinión.

Con estas aclaraciones, estoy conforme con la resolución del Tribunal que deniega la reconsideración presentada por el Hon. Procurador General en *Partido Popular Democrático et al. v. Partido Nuevo Progresista et al.*, Caso Núm. CT-95-10.

B. *Moción Adoptando "Moción de Reconsideración" de los otros Co-Demandados, Solicitud de Reconsideración y Escrito Reiterando Solicitud de Desestimación*

Por las mismas razones estoy conforme con la resolución en cuanto a que ésta deniega la moción titulada Moción

Adoptando "Moción de Reconsideración" de los otros Co-Demandados, Solicitud de Reconsideración y Escrito Reiterando Solicitud de Desestimación, presentada por los codemandados Partido Nuevo Progresista y el Hon. Pedro Rosselló González en su carácter personal.

C. *Moción de reconsideración de la Administración de Seguros de Salud y la Hon. Magali Oms de Maldonado*

En cuanto a la moción de reconsideración presentada por la Administración de Seguros de Salud de Puerto Rico (A.SE.S.) y su entonces Directora Ejecutiva, Dra. Magali Oms de Maldonado, en ésta se solicita que se desestime la demanda contra A.SE.S. y su Directora Ejecutiva, a base de que no se presentó evidencia alguna en su contra para avalar la alegación del uso ilegal de fondos públicos para los anuncios que son objeto de la demanda.

Considerando la moción de desestimación presentada, las alegaciones de la demanda, los hechos estipulados y los planteamientos de la parte demandante en su moción en oposición a la reconsideración, creo conveniente que los planteamientos de las partes sobre la desestimación sean resueltos por el foro de instancia, luego de brindarle a las partes plena oportunidad de ser oídas y presentar prueba, de estimarse que ésta es necesaria. Por estas razones estoy conforme en denegar la solicitud de reconsideración.

## II

*Lcdo. Max Pérez Preston y otros v. Hon. José E. Aponte y otros, AP-95-9*

Con respecto a la moción de reconsideración presentada por los demandados en el caso *Lcdo. Max Pérez Preston y otros v. Hon. José E. Aponte y otros*, Caso Núm. AP-95-9, sólo me preocupan los planteamientos que se hacen con respecto a nuestra orden en el *injunction* preliminar diri-

gida a los codemandantes para que éstos procedan de inmediato a remover, a su cargo y de su propio peculio, el logo que es objeto de nuestra prohibición de todos los lugares en que ha sido colocado o impreso con fondos públicos. Esta prohibición, distinta a la de no hacer, ordenada en el *injunction* preliminar dictado en *Partido Popular Democrático v. Partido Nuevo Progresista et al.*, Caso Núm. CT-95-10, ordena una actuación que requiere la erogación de fondos por parte de los demandados y, por lo tanto, participa de la naturaleza y característica de una concesión por daños. Tomando en consideración que estamos en una etapa preliminar del caso, ya que lo que se emitió fue un *injunction* preliminar, y, en parte, por los argumentos que he esbozado en cuanto a los planteamientos con respecto a la reconsideración presentada en el caso *Partido Popular Democrático v. Partido Nuevo Progresista et al.*, Caso Núm. CT-95-10, reconsideraría esta parte de nuestra orden y dejaría que fuera el foro de instancia el que, luego de recibir la prueba y oir los argumentos de las partes, resolviera lo que en derecho proceda.

Por todo lo antes expuesto, en el caso *Partido Popular Democrático v. Partido Nuevo Progresista et al.*, Caso Núm. CT-95-10, estoy conforme con la resolución del Tribunal que deniega las reconsideraciones y devuelve el caso para que continúen los procedimientos en instancia, compatible con nuestra opinión de 22 de diciembre de 1995.

En cuanto al caso *Lcdo. Max Pérez Preston y otros v. Hon. José E. Aponte y otros*, Caso Núm. AP-95-9, estoy conforme con la posición adoptada por la mayoría al reconsiderar en parte nuestra orden de *injunction* preliminar. Estoy de acuerdo en que ésta se debe modificar a los solos efectos de eliminar de ella que los demandados, en esta etapa de los procedimientos, tengan que remover, a su cargo y de su propio peculio, el logo de los lugares donde ha sido colocado o impreso con fondos públicos. Así modificada la orden de *injunction* preliminar, la confirmaría y devol-

vería el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo resuelto en nuestra opinión de 22 de diciembre de 1995. Cónsono con esta posición, denegaría la moción de desacato que fue presentada por la parte apelante por prematura.