MAX PÉREZ PRESTON y OTROS, recurrentes, *v.* HON. JOSÉ E. APONTE y OTROS, recurridos.

*Número:* AP-95-9        *Resuelto:* 25 de enero de 1996

*Rina Biaggi García* y *Marcos Ramírez Lavandero,* abogados de la parte recurrente; *Pedro E. Ortiz Álvarez, Felipe Bravo* y *Troadio González Vargas,* abogados de la parte recurrida.

## RESOLUCIÓN

Con relación al Caso Núm. AP-95-9, *Lcdo. Max Pérez Preston y otros v. Hon. José E. Aponte y otros, el Tribunal reconsidera la orden de "injunction" preliminar dictada al solo efecto de eliminar de ésta que los demandados, en esta etapa de los procedimientos, tengan que remover, a su cargo y de su propio peculio, el logo de los lugares donde haya sido colocado o impreso con fondos públicos.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López está conforme por las razones expuestas en el voto particular que hoy emitió en *P.P.D. v. Gobernador II,* 139 D.P.R. 984 (1996). La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Fuster Berlingeri hacen constar que

están conformes con esta resolución por las razones expuestas en el voto particular de conformidad emitido por la Juez Asociada Señora Naveira de Rodón en *P.P.D. v. Gobernador II*, supra. El Juez Asociado Señor Corrada Del Río expresa que, por las razones expuestas en su opinión disidente, reconsideraría el caso en su totalidad. El Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton disintieron y reiteran sus posiciones. El Juez Asociado Señor Negrón García emitió un voto disidente.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

**— O —**

Voto disidente del Juez Asociado Señor Negrón García.

I

Transcurrido escasamente un (1) mes de haberse emitido la opinión en el caso de epígrafe, comienza la erosión de la doctrina judicial que el 22 de diciembre de 1995

> ... rescató y aplicó unos preceptos constitucionales vigentes desde 1952. Éstos sostienen la ilegalidad de los desembolsos de fondos públicos para financiar unas campañas publicitarias político-partidistas, en interacción con el principio igualitario en materia de financiamiento electoral expuesto prístinamente en: *Marrero v. Mun. de Morovis*, 115 D.P.R. 643, 646 (1984),; *P.R.P. v. E.L.A.*, 115 D.P.R. 631, 640 (1984), y *P.P.D. v. Gobernador II*, 136 D.P.R. 916 (1994).
> No estamos, pues, ante una decisión o una nueva regla jurisprudencial que permita invocar y justificar sólo su prospectividad. Sería un contrasentido, por no decir una burla, que con estos claros precedentes judiciales le negáramos los efectos retroactivos. Significaría admitir que el Poder Judicial ha incurrido en un ejercicio académico y vacuo al proclamar la vigencia de una Constitución abstracta e inoperante.

Toda campaña publicitaria de carácter político-partidista es "una práctica perjudicial inconstitucional que inflige una lacerante herida al entretejido sociodemocrático. Procede detenerla, proscribirla mediante el remedio de *injunction*, y remitir los tres (3) casos al tribunal de instancia para la continuación y adjudicación de los remedios procedentes". (Escolio y énfasis omitidos.) *P.P.D. v. Gobernador I*, [139 D.P.R. 643, 753 (1996)], opinión concurrente. *P.P.D. v. Gobernador II*, 139 D.P.R. 984— 990 (1996), voto concurrente.

## II

La contención principal de los demandados apelados, el Alcalde de Carolina, Hon. José E. Aponte, y la Directora de Finanzas Municipal, Sra. Yolanda Villafañe, es que obligarlos a remover el logo de su propio peculio "constituye una especie de restitución para lo cual los demandantes [Pérez Preston y otros], según expresamente resuelto en este caso, carecen de legitimación". Moción de reconsideración, págs. 7–8. También exponen que era menester presentar una prueba pericial para concluir el carácter partidista del logo y del folleto. Por otro lado, se aduce que no procede la orden, según la tesis de que la remoción a su propio peculio goza de la naturaleza de daño. No tienen razón.

Una mayoría de este Tribunal concluyó que tales, logo y folleto, eran inconstitucionales por su naturaleza eminentemente político-partidista en favor de la candidatura de Aponte por el Partido Popular Democrático (P.P.D.) en las elecciones generales de este año. *Para arribar a esa determinación, no fue ni es ahora necesario traer una prueba pericial, basta con el examen visual, el análisis juicioso y penetrante y las inferencias razonables del jurista.*

Ante estas realidades, disentimos con vehemencia de la resolución mayoritaria que hoy releva a los demandados apelados, el Alcalde Aponte y otros, del interdicto que les ordenaba *"inmediatamente a remover, a su cargo y de su propio peculio,* dicho logo de todos los lugares en que ha sido colocado o impreso con fondos públicos, incluso vehí-

culos municipales, canchas, rótulos y otros lugares y objetos". (Énfasis suplido.) *P.P.D. v. Gobernador I*, 139 D.P.R. 643, 697 (1996).

Ese relevo pone en jaque la juridicidad, virtualidad y seriedad de nuestra opinión y sentencia. ¿Quién pagará ahora la remoción del logo? El propio Alcalde nos dice que su costo provendrá y será efectuado con *fondos municipales*, a través de las brigadas y los vehículos municipales que sean utilizados. *Es una ironía. Si antes la lesión constitucional era seria, ahora es más grave y aumentará el perjuicio al erario municipal.*

## III

Difícilmente puede concebirse que el costo de los demandados para remover el logo participa de la naturaleza y característica de una "concesión de daños". Admitimos que ello podría menguar el patrimonio personal del Alcalde Aponte y otros. *Sin embargo, paradójicamente, el remedio mayoritario para evitarlo es empobrecer al Municipio de Carolina después* de haber decretado como inconstitucionales sus actuaciones y como ilegal el uso de los fondos municipales. Al eximirle de su obligación de removerlos, se genera un daño directo al Municipio.

De ordinario, cualquier orden de interdicto preliminar implica, entre otros efectos, una disminución del patrimonio de quien esté obligado a acatarlo. En la medida que obliga e impone a una persona el deber de hacer o dejar de hacer, conlleva teóricamente un impacto a su patrimonio, que puede ser o no caracterizado como daño. Sin embargo, ello nunca ha impedido el cumplimiento de estos dictámenes judiciales. *De lo contrario, jamás podrían ejecutarse aquellos interdictos preliminares que conllevan los efectos antes indicados.*

La opinión mayoritaria prohibió de manera absoluta el uso y la erogación de fondos públicos en esa campaña

publicitaria. Desconocemos bajo qué novel argumento puede sostenerse que el Alcalde Aponte esté autorizado a usar fondos municipales adicionales, sujeto a los resultados judiciales, que se adjudiquen sobre su responsabilidad personal durante el trámite ulterior. Precisamente, concluimos antes inequívocamente que sus actuaciones *originales* y la campaña masiva con el logo eran ilegales e inconstitucionales. *Todo parece indicar que estamos ante un desembolso, a título de "préstamo", de fondos municipales. ¿Cómo es posible?*

En resumen, si prohibimos por inconstitucional "todo desembolso para el pago de la publicación, impresión, difusión o divulgación del referido logo", ¿cómo podemos autorizar y avalar un desembolso *más* para su remoción?

Para el jurista, el *sentido común* sigue siendo uno de los mejores antídotos contra las *injusticias*.