ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **KF REALTY LLC**<br><br>Apelado<br><br>v.<br><br>**CARLOS JAVIER MARTÍNEZ SOTO y ENID MARÍA LOUBRIL PÉREZ, por sí y en representación de la Sociedad Legal de Bienes Gananciales compuesta por ambos; CONDOMINIO ASHFORD 1350; FULANO DE TAL; COMPAÑÍA ASEGURADOR X, Y, Z**<br><br>Apelantes | KLAN202301024 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2018CV10065**<br><br>Sobre: Incumplimiento de Contrato; Resolución de Contrato por Dolo y Fraude; Daños y Perjuicios Contractuales; Daños y Perjuicios Extracontractuales |

Panel integrado por su presidente, el Juez Rivera Torres, la Jueza Rivera Pérez y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de abril de 2024.

Comparece ante nos el señor Carlos Martínez Soto, la señora Enid Loubriel Pérez y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Martínez-Loubriel o apelante) y nos solicitan revisar una *Sentencia en Rebeldía* emitida el 17 de agosto de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[2] En virtud del aludido dictamen, el TPI declaró Ha Lugar la *Demanda* instada por KF Realty, LLC (KF Realty o apelada) y, consecuentemente,

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución de la Hon. Laura I. Ortiz Flores.

[2] Recurso de *Apelación,* Anejo I, págs. 1-9. Archivada y notificada en autos el 21 de agosto de 2023. El 1 de septiembre de 2023, el matrimonio Martínez-Loubriel solicitó reconsideración, la cual el TPI declaró No Ha Lugar mediante *Resolución* emitida y notificada el 17 de octubre de 2023.

le impuso al matrimonio Martínez-Loubriel el pago de daños y perjuicios, temeridad, honorarios de abogado e intereses legales.

Por los fundamentos que esbozamos a continuación, confirmamos la *Sentencia* apelada.

## I.

El caso de marras dimanó el 20 de noviembre de 2018 cuando KF Realty incoó una demanda contra el matrimonio Martínez-Loubriel, el Condominio Ashford 1350, Fulano de Tal y Compañía Aseguradora X, Y, y Z (en conjunto, la parte demandada), por incumplimiento de contrato, resolución de contrato por dolo y fraude, daños y perjuicios contractuales y daños y perjuicios extracontractuales.[3]

Mediante esta, KF Realty alegó que el 6 de julio de 2018, suscribió un contrato de compraventa con el matrimonio Martínez-Loubriel con relación al apartamento R-6-A, localizado en el Condominio Ashford 1350 en San Juan, Puerto Rico, por la suma de doscientos diez mil dólares ($210,000.00). Además, sostuvo que dicho contrato de compraventa se elevó a documento público mediante la Escritura Número veintiuno (21), otorgada el 24 de julio de 2018 ante el notario Ángel D. Noriega Haiffe. Esgrimió que la parte demandada nunca le informó que las tuberías del apartamento ostentaban problemas de filtración debido a un tubo *cast iron*. Adujo que se enteró posteriormente porque se lo explicó el señor Jorge Fusero, vecino afectado por la filtración.

KF Realty expuso que la parte demandada discutió el problema de la filtración de las tuberías con el señor Fusero mediante un correo electrónico del 6 de agosto de 2018. En este, arguyó que el señor Eduardo Joglar inspeccionó el apartamento del señor Fusero, así como el adquirido por KF Realty, y encontró que la entrada del agua surgía por el área abierta en el balcón del apartamento que adquirió KF

---

[3] *Íd.*, Anejo V, págs. 31-38.

Realty. Así las cosas, reclamó que al momento de suscribir el contrato de compraventa desconocía sobre el problema de filtración en las tuberías y las reparaciones que requiere el apartamento, dado que la parte demandada nunca le informó. Por todo ello, KF Realty solicitó los siguientes remedios e indemnización: primero, que se diera por resuelto el contrato de compraventa y la obligación pecuniaria entre las partes, se devolvieran las contraprestaciones, así como que se le reembolsara todos los gastos incurridos en el litigio, así como los honorarios de abogados. Segundo, peticionó que el matrimonio Martínez-Loubriel le respondiera por los daños y perjuicios contractuales, estimados en una suma no menor de cincuenta mil dólares ($50,000.00). Por último, reclamó que el Condominio Ashford 1350 respondiera por daños y perjuicios extracontractuales, estimados en una suma no menor de cincuenta mil dólares ($50,000.00).

El 22 de febrero de 2019, el matrimonio Martínez-Loubriel contestó la *Demanda* incoada por KF Realty y radicó una *Demanda contra coparte*.[4] En esta, admitió que no se le informó a KF Realty sobre el problema de filtración en las tuberías del apartamento dado que no existían. Por otro lado, indicó estar dispuesto a tomar las medidas de rigor para que el Condominio Ashford 1350 asumiera y cumpliera con su obligación de reparar e impermeabilizar el techo y azotea de forma y manera que cesara la filtración. En la *Demanda contra coparte*, el matrimonio Martínez-Loubriel alegó que el problema de filtración identificado en la azotea del apartamento que adquirió KF Realty versaba sobre un elemento común general que el Condominio Ashford 1350 estaba obligado a corregir.

Tras varios trámites procesales, el 11 de agosto de 2020, el Foro Primario emitió y notificó una *Sentencia parcial* en la que desestimó la

---

[4] *Íd.*, Anejo 6, págs. 39-44.

*Demanda* incoada por KF Realty contra el codemandado Condominio Ashford 1350.[5]

Posteriormente, el 8 de septiembre de 2021, el TPI emitió una *Sentencia parcial* en la que le anotó la rebeldía al matrimonio Martínez-Loubriel por haber transcurrido más de un año sin cumplir con la *Orden* del Tribunal en anunciar su representación legal y desestimó la *Demanda contra coparte* presentada por el matrimonio Martínez-Loubriel contra el Condominio Ashford 1350.[6]

Así las cosas, posterior a celebrar el juicio en su fondo,[7] el 17 de agosto de 2023, el Foro apelado emitió una *Sentencia en Rebeldía.*[8] Mediante esta, el TPI estableció que tras un análisis de las alegaciones bien hechas de la *Demanda* y de la evidencia admitida durante la vista en su fondo, declaró Ha Lugar a la *Demanda.* El TPI también concluyó que KF Realty desistió de sus reclamaciones de la resolución del contrato de compraventa y las devoluciones de las contraprestaciones.[9] En consecuencia, el Foro *a quo* ordenó que el matrimonio Martínez-Loubriel debía emitir los siguientes pagos a favor de KF Realty: una suma de nueve mil cuatrocientos dólares ($9,400.00), por concepto de daños y perjuicios económicos, y una suma de cinco mil dólares ($5,000.00), por concepto de honorarios de abogados e intereses legales hasta el saldo completo.

El 1 de septiembre de 2023, mediante *Moción de Reconsideración,* el matrimonio Martínez-Loubriel solicitó que se dejara sin efecto la condena de daños y la imposición de honorarios de abogados.[10] También le solicitó al TPI que, en lugar de sus determinaciones, le impusiera a KF Realty el pago de $5,000 en

---

[5] Tomamos conocimiento judicial del expediente del caso SJ2018CV10065 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 85.
[6] Entrada Núm. 123. Archivada y notificada en autos el 9 de septiembre de 2021.
[7] Véase Entrada Núm. 134.
[8] Recurso de *Apelación,* Anejo I, págs. 1-9. Archivada y notificada en autos el 21 de agosto de 2023.
[9] *Íd.*, pág. 2.
[10] *Íd.*, Anejo II, págs. 10-23.

honorarios de abogado por su alegada patente contumacia y temeridad. El 17 de octubre de 2023, el TPI determinó no ha lugar a la *Moción de Reconsideración* y se sostuvo en sus determinaciones.

Inconforme, el 15 de noviembre de 2023, el matrimonio Martínez-Loubriel presentó ante este Foro una *Solicitud de Apelación*. En esta, señaló los siguientes errores:

> **1. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR EN SU TOTALIDAD LA DEMANDA CUANDO LA APELADA DESISTIÓ CON PERJUICIO DE LA ACCIÓN REDHIBITORIA. LA RECLAMACIÓN DE DAÑOS ESTÁ INEXORABLEMENTE ATADA A LA RESOLUCIÓN DE LA COMPRAVENTA POR LO QUE NO PUEDE EXISTIR POR SI SOLA COMO SEPARADA E INDEPENDIENTE.**
> **2. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN NO DESESTIMAR LA RECLAMACIÓN DE DAÑOS POR ALEGADAS DEFICIENCIAS APARENTES Y CONSTATADAS A SIMPLE VISTA POR ASÍ DISPONERLO LA LEY Y LOS APELANTES HABER SIDO RELEVADOS EXPRESAMENTE DE TODO EN LA ESCRITURA DE [COMPRAVENTA], EXHIBIT 3. (AP. 10).**
> **3. EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL CONDENAR A LOS APELANTES AL PAGO DE DAÑOS ASCENDENTES A $9,400.00 EQUIVALENTES AL COSTO DE LA REMODELACIÓN DE LA TERRAZA DEL PH-6 CUANDO NO EXISTE EVIDENCIA ALGUNA DE DEFICIENCIAS EN EL PISO DE LA TERRAZA CONSTITUTIVAS DE LA CAUSA U ORIGEN DE FILTRACIONES QUE AFECTAN EL APARTAMENTO 3-A.**
> **4. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL PERMITIR EVIDENCIA DOCUMENTAL SOBRE EL COSTO DE RESTAURAR LA TERRAZA CUANDO ELLA NO GUARDA RELACIÓN Y NI ES PERTINENTE A LAS ALEGACIONES DE LA DEMANDA SOBRE DEFICIENCIAS APARENTES EN EL PISO DEL BALCÓN DEL PH-6.**
> **5. EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL IMPONERLE TEMERIDAD A LOS APELANTES Y ORDENAR EL PAGO DE $5,000.00 DE HONORARIOS DE ABOGADO CUANDO NO EXISTE SEÑALAMIENTO ALGUNO INDICATIVO DE TEMERIDAD.**

## II.

### A.

"[L]a sentencia que dicta un Juez de Primera Instancia es el producto final de un activo y complejo proceso forense". L. Rivera Román, *La apreciación de prueba en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones* en *Perspectivas en la práctica*

*apelativa,* San Juan, Ediciones SITUM, 2018, pág. 101. Estas gozan de una presunción de corrección y la parte que impugne una determinación del Tribunal de Primera Instancia tiene el peso de la prueba para refutarla. *Íd.*

Nuestro Tribunal Supremo ha reconocido que el juzgador de los hechos en primera instancia está en especial ventaja al hacer determinaciones de hechos y aquilatar la prueba testifical y las adjudicaciones de credibilidad. *Pueblo v. Rivera Montalvo,* 205 DPR 352, 373 (2020); *Pueblo v. De Jesús Mercado,* 188 DPR 467, 477-478 (2013); *Pueblo v. Rosario Reyes,* 138 DPR 591, 598 (1995). "[C]omo norma general, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro". *Pueblo v. Rivera Maldonado, supra,* pág. 373. "Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro **únicamente** cuando existen circunstancias extraordinarias en las que **se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho**". *Íd.* (Énfasis nuestro).

Un tribunal actúa con pasión, prejuicio o parcialidad cuando está "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

Para determinar si un tribunal incurrió en craso abuso de discreción, se deben considerar los siguientes criterios:

> [E]l juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y

descartar los irrelevantes, el juez sopesa y los calibra livianamente.

*Pueblo v. Custodio Colón*, 192 DPR 567, 589 (2015).

"Por último, un juzgador incurre en error manifiesto que justifica la intervención del tribunal apelativo cuando 'la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble'". *Pueblo v. Rivera Maldonado*, *supra*, pág. 374. (citando a *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002)).

**B.**

La obligación "consiste en el deber de realizar una prestación. Esta es la conducta que ha de seguir el obligado para extinguir la obligación mediante el correspondiente acto de cumplimiento". J. Puig Brutau, *Compendio de derecho civil*, 2ª ed. rev., Barcelona, Ed. Bosch, 1994, Vol. II, pág. 1. De particular interés a nuestro análisis son las obligaciones que nacen de los contratos.

Un contrato es el negocio jurídico entre dos o más personas donde las partes contratantes se obligan a dar, hacer o no hacer una cosa. El Artículo 1044 del Código Civil de 1930,[11] (30 LPRA sec. 2994) (Código Civil de 1930) dispone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de los mismos". Los contratantes pueden exigir el cumplimiento específico con las cláusulas y condiciones pactadas. *Casera Foods v. E.L.A.*, 108 DPR 850 (1979). "Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Código Civil de 1930, *supra*, Art. 1233. Los contratantes se "obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". *Íd.*, Art. 1210.

---

[11] Aunque el Código Civil de 1930 fue derogado tras la aprobación del Código Civil de 2020, Ley Núm. 55-2020, (31 LPRA sec. 5311 *et seq.*), hacemos referencia al Código Civil de 1930 puesto que estaba vigente cuando se constituyó el contrato de compraventa.

Cuando una parte no cumple lo pactado, incurre en incumplimiento contractual. "[L]a responsabilidad contractual se basa 'en el quebrantamiento de un deber que surge de un contrato expreso o implícito'. A través de las acciones *ex contractu* se vindican los daños acaecidos como consecuencia del incumplimiento de obligaciones previamente pactadas". *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 56 (2015) (citando a *Soc. de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998)).

"La compraventa es el más universal de los contratos y el regulado con más detalle por todos los ordenamientos, como prototipo de los contratos traslativos de la propiedad a título oneroso". Puig Brutau, *op. cit.*, pág. 351. En un contrato de compraventa, la parte vendedora "está obligad[a] a la entrega y saneamiento de la cosa objeto de la venta". Código Civil de 1930, *supra*, Art. 1350. El vendedor tiene frente al comprador la obligación de garantizarle el goce útil y pacífico del objeto que le vendió.

El saneamiento es nada más que una garantía al comprador "que la cosa adquirida por éste está libre de vicios y gravámenes ocultos (goce útil) y además, le asegura que el título y posesión no le serán disputados por terceros reclamantes (goce pacífico)". J. R. Vélez Torres, *Curso de derecho civil*, San Juan, Universidad Interamericana de Puerto Rico, 1990, Tomo IV Vol. II, pág. 177. "En virtud del saneamiento a que se refiere el Artículo 1350, el vendedor responderá al comprador: (1) De la posesión legal y pacífica de la cosa vendida. (2) **De los vicios o defectos ocultos que tuviere**". Código Civil de 1930, *supra*, Art. 1363. (Énfasis nuestro).

Ahora bien, la identificación de un vicio oculto no es una tarea fácil ni está basada en una fórmula matemática establecida. Los tribunales deben hacer la determinación caso a caso. *Pacheco v. Estancias*, 160 DPR 409, 423 (2003). El tratadista Puig Brutau nos señala que los defectos ocultos "son los que no están manifiestos o a

la vista, y quedan excluidos los que pueden percibirse normalmente, tanto por su carácter manifiesto como por ser el comprador una persona especialmente capacitada para darse cuenta de su existencia". Puig Brutau, *op. cit.*, págs. 379-380.

Los Arts. 1373-1375 del Código Civil de 1930, *supra,* disponen las normas en torno a los vicios ocultos y los remedios disponibles para el comprador. Estos disponen:

> Artículo 1373. — Saneamiento por defectos o gravámenes ocultos.
> El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina o si disminuyen de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos.
> Artículo 1374. — Defectos desconocidos por el vendedor.
> El vendedor responde al comprador del saneamiento por los vicios o defectos ocultos en la cosa vendida aunque los ignorase.
> Esta disposición no regirá cuando se haya estipulado lo contrario, y el vendedor ignorara los vicios o defectos ocultos de lo vendido.
> Artículo 1375. — Opción entre desistir del contrato o reducir el precio; daños.
> En los casos de los dos Artículos anteriores, el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de peritos. Si el vendedor conocía los vicios o defectos ocultos de la cosa vendida y no los manifestó al comprador, tendrá éste la misma opción y además se le indemnizará de los daños y perjuicios, si optare por la rescisión.

Para que los vicios ocultos puedan dar lugar al saneamiento, precisan la concurrencia de los siguientes requisitos: (a) ser oculto o encubierto en el sentido de que no eran, ni pudieran ser conocidos por el adquirente de la cosa; *Íd.*, Art. 1373, (b) que el defecto sea tan grave que haga la cosa impropia para el uso a que se le destina, o disminuya este uso de tal modo que de haberlo conocido el comprador, no hubiese adquirido o no hubiese pagado el precio que pagó; *Íd.*, (c) que el defecto sea anterior a la venta; y (d) que la acción se ejercite dentro del plazo de seis (6) meses contados a partir de la entrega de la cosa, o de la

última gestión de inteligencia realizada entre las partes. *Íd.*, Art. 1379.

Véase, además, *Boyd v. Tribunal Superior*, 101 DPR 651 (1973); *Casa Jaime Corp. v. Castro*, 89 DPR 702, 704 (1963). En el caso de bienes inmuebles, se considera que la fecha de entrega es la del otorgamiento de la escritura de compraventa, salvo que se demuestre otra cosa. Trascurrido dicho término de seis (6) meses, el comprador no podrá ejercitar estas acciones.

Por lo general, una parte vendedora responde por los vicios ocultos de una propiedad ante los daños que estos le causen a la parte compradora. Sin embargo, la parte vendedora puede ser relevada de su responsabilidad por vicios ocultos si se cumple con dos criterios. Estos son: 1) que la parte vendedora y la parte compradora hayan pactado el relevo de responsabilidad por vicios ocultos; **y, 2) que la parte vendedora, al momento de hacer la estipulación, haya desconocido del vicio oculto**. Art. 1373 del Código Civil de 1930, *supra.*

Con relación a las acciones que puede tomar el comprador, el Art. 1375 del Código Civil de 1930, *supra*, dispone que "el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de peritos".[12] Ahora bien, nuestro Tribunal Supremo ha reconocido que los remedios contemplados en este artículo no son taxativos. Hay que "recalcar que estos casos de ventas de viviendas defectuosas no tienen que enmarcarse necesariamente dentro de los postulados que sientan los arts. 1373 al 1375 […]". *Gónzalez v. Centex Const. Co., etc.*, 103

---

[12] En *Márquez v. Torres Campos*, 111 DPR 854 (1982), nuestro Tribunal Supremo reconoció que, en cuanto al saneamiento sobre vicios ocultos, el comprador afectado puede optar entre la acción redhibitoria y la estimatoria o quantiminoris.

> Mediante la redhibitoria el comprador elige la rescisión del contrato que consiste en devolver el objeto y recibir el precio pagado, y en adición puede obtener indemnización de daños si el vendedor conocía el vicio. Mediante la estimatoria elige recibir una rebaja del precio en atención a la disminución de valor ocasionada por el defecto.

> *Íd.*, pág. 863.

DPR 82, 85 (1974). El comprador tiene varias alternativas, incluyendo la acción decenal, la recisión por error, dolo o lesión, o aquellas acciones que se derivan de la violación de las obligaciones contractuales. *Íd.*, págs. 85-86.

### C.

El Código Civil de 1930 también reconoce que aquella persona que por culpa o negligencia le cause daño a otra viene llamado a repararlo. Art. 1802, Código Civil, *supra.* Esta causa de acción surge de manera independiente a cualquier otra disposición en el Código Civil de 1930, por lo que puede ser reclamada al cumplir con los requisitos del Art. 1802, *Íd.*, y no depende de otra causa de acción. *Hernández v. Fournier*, 80 DPR 93, 103 (1957). Debemos destacar que los remedios disponibles al amparo de los Arts. 1373-1375 del Código Civil de 1930 no son exclusivos, por lo que un demandante tiene una causa de acción independiente que surge del Art. 1802 antes mencionado por daños causados por vicios ocultos.

Por lo tanto, no quedará limitado, de forma alguna, el derecho de un comprador a ejercer cualquier acción que le reconozcan las leyes generales o especiales de Puerto Rico, así como las acciones de saneamiento por  evicción, saneamiento por  vicios  ocultos  o redhibitoria y cualesquiera otras que reconozca el Código Civil de Puerto Rico. A la misma vez, los tribunales están facultados para conceder cualquier remedio que en derecho proceda, aunque las partes no lo hayan alegado. Reglas 42.4 y 70 de Procedimiento Civil, 32 LPRA Ap. V; *Negrón Rivera y Bonilla, Ex Parte*, 120 DPR 61, 72 (1987). "[A]unque el nuestro es un sistema adversativo de derecho rogado, un tribunal no tiene que conceder lo que se le pide; su deber es conceder sólo lo que en derecho proceda". *P.P.D. v. Gobernador II*, 139 DPR 984, 1004 (1996) (Voto concurrente del Juez Asociado Señor Negrón García).

Para prosperar en una acción por daños al amparo del Art. 1802, *supra,* es necesario cumplir con los siguientes requisitos: 1) la existencia de un daño; 2) la existencia de una acción u omisión culposa o negligente; y, 3) la correspondiente relación causal entre el daño y la conducta culposa o negligente. *López v. Porrata Doria,* 169 DPR 135 (2006); *Hernández Vélez v. Televicentro,* 168 DPR 803 (2006); *Administrador v. ANR,* 163 DPR 48 (2004); *Montalvo v. Cruz,* 144 DPR 748 (1998); *Bonilla v. Chardón,* 118 DPR 599 (1987).

El tratadista Puig Brutau define el daño como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". J. Puig Brutau, *op. cit.*, pág. 627. (Citas omitidas). Nuestro ordenamiento jurídico reconoce dos clases de daños, los especiales y los generales. *Nieves Díaz v. González Massas*, 178 DPR 820, 845 (2010). "Los daños especiales se refieren a toda aquella pérdida que recae sobre los bienes objetivos, pues estos daños admiten una valoración económica debido a que impactan directamente el patrimonio del perjudicado. Mientras, los daños generales son los infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado". *Íd.* (Citas omitidas). Por lo tanto, el concepto de daños en nuestra jurisdicción es amplio y general, por lo que los tribunales no deben crear impedimentos indebidos al reclamo de daños y sólo aplicar aquellos reconocidos por ley. Lo importante para que prospere una alegación de daños es que la parte que los reclame los logre probar en un tribunal.

En cuanto a la culpa, nuestro Tribunal Supremo ha reconocido en varias ocasiones que esta es tan amplia como la conducta humana. *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305, 310 (1970). "La culpa o negligencia es la falta del debido cuidado, que consiste en no anticipar ni prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las

mismas circunstancias". *Rivera v. S.L.G. Díaz,* 165 DPR 408, 421 (2005). Como es sabido, la conducta constituyente de culpa puede estar basada tanto en una acción como en una omisión. En los casos donde se alega que el daño fue causado por una omisión culposa, quien reclama debe demostrar que: 1) existe un deber de actuar y se quebrante esa obligación; y, 2) cuando de haberse realizado el acto omitido se hubiese evitado el daño. *Santiago v. Sup. Grande,* 166 DPR 796, 807 (2006).

En el caso ante nuestra consideración, la pregunta de umbral debe ser si existe un deber de notificarle a unos compradores sobre los vicios ocultos de un inmueble. Como ya hemos discutido, el saneamiento es la garantía de un vendedor a un comprador de que el objeto de la compraventa no adolece de defectos o vicios ocultos. Es forzoso, por lo tanto, concluir que un vendedor tiene un deber de notificarle al comprador de los vicios ocultos en un bien inmueble si conociere de ellos.

**D.**

Los tribunales tienen la potestad de colocar en rebeldía a una parte que haya dejado de ejercitar su derecho a defenderse o de cumplir con sus deberes procesales. R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil,* 6ª ed. rev., San Juan, LexisNexis de Puerto Rico, 2017, pág. 327. Entre las consecuencias que conlleva la declaración de rebeldía está que se admiten todos los hechos bien alegados en la demanda que se haya formulado en contra del rebelde. *Íd.,* pág. 329. También autoriza al tribunal a emitir una sentencia si esta procede en derecho. *Íd.* "[L]a característica medular tradicionalmente aceptada del mecanismo procesal de una rebeldía, consiste en que los hechos expuestos en una reclamación se consideran ciertos, y en contra de los mismos, la parte contraria no puede presentar prueba para controvertirlos". *Continental Ins. Co. v. Isleta Marina,* 106 DPR 809, 814 (1978).

**E.**

En cuanto a la temeridad, nuestro Tribunal Supremo ha resuelto que esta implica "aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias". *Oliveras, Inc. v. Universal Ins. Co.*, 141 DPR 900, 935 (1995). La conducta temeraria consiste en:

> una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces [exorbitante] para su peculio.
>
> H. Sánchez, *Rebelde Sin Costas*, 4(2) Boletín Judicial 14 (1982).

Por lo tanto, nuestro ordenamiento jurídico provee mecanismos para disuadir la conducta temeraria. Uno de estos es la Regla 44.1(d) de Procedimiento Civil, *supra*, que permite la imposición de honorarios de abogado a la parte que haya procedido con temeridad o frivolidad en el proceso. Dicha determinación descansa en la sana discreción del tribunal sentenciador. R, Hernández Colón, *op. cit.*, esc. 4, pág. 436. Tan amplia es la discreción del tribunal sentenciador que este "puede tomar en consideración la conducta observada por las partes antes de presentarse la acción judicial y antes de ser emplazada la parte demandada". *Íd.*, pág. 437.

Existirá temeridad cuando: 1) en la contestación a la demanda se niegue responsabilidad, pero ésta se acepte posteriormente; 2) la parte demandada se defienda injustificadamente de la acción; 3) se crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante, en lugar de admitir responsabilidad y limitar la controversia a la fijación de la cantidad reclamada; 4) el demandado se arriesgue a litigar un caso del que surja a todas luces su responsabilidad; o, 5) cuando se niegue un hecho

cuya certeza le consta a quien hace la alegación. *O.E.G. v. Román,* 159 DPR 401 (2003); *Dominguez v. GA Life,* 157 DPR 690 (2002). Cuando un tribunal de instancia estime que exista temeridad, este viene obligado a imponer honorarios. Los foros apelativos, en consecuencia, **solo deben intervenir con la imposición de honorarios cuando medie un claro abuso de esa discreción**. *Meléndez Vega v. El Vocero*, 189 DPR 123, 211 (2013).

### III.

Discutido el derecho aplicable, nos encontramos en posición de resolver. Como hemos señalado, la parte apelante no ha logrado demostrar razones por las cuales debemos revocar al TPI.

En cuanto al primer error, la parte apelante alegó que el TPI erró al imponerle daños, aunque consideró que KF Realty desistió de la acción redhibitoria. Sobre este, hemos señalado que, aunque un demandante tiene disponible la acción redhibitoria como remedio ante daños por vicios ocultos, no es el único remedio disponible. Ninguna disposición en el Código Civil de 1930 ni en las leyes ni en la jurisprudencia pautada dispone que el saneamiento es el único remedio disponible para un comprador afectado por daños causados por vicios ocultos. Al contrario, hemos reconocido que un demandante puede ejercer cualquier acción que le reconozcan las leyes generales o especiales de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos o redhibitoria y **cualesquiera otras que reconozca el Código Civil de Puerto Rico**. En consecuencia, KF Realty tiene derecho a reclamar daños al amparo del Artículo 1802 del Código Civil de 1930, independiente de la causa de acción por saneamiento. Una no depende de la otra.

No consideramos que el TPI haya errado al imponerle daños a la parte apelante. Al contrario, de la prueba aceptada por el tribunal de instancia, entendemos que KF Realty logró cumplir con todos los requisitos de una causa de acción de responsabilidad

extracontractual. No tenemos duda de que la apelada haya sufrido un daño a causa de la omisión culposa de la parte apelante. La parte apelante tenía un deber de informar a KF Realty sobre cualquier defecto sobre cual haya tenido conocimiento. Al incumplir con este deber, cometió una omisión culposa. También existe un nexo causal entre el daño causado y la omisión, puesto que, según su *Alegato en Oposición*, KF Realty no hubiese comprado la propiedad objeto de la compraventa si hubiese conocido del problema de filtración. En otras palabras, no hubiese sufrido el daño si hubiese conocido del vicio oculto.

Como segundo error, la parte apelante señala que el TPI erró al no desestimar la acción de daños por vicios ocultos por así disponerlo la ley y las partes haber pactado relevar a la parte apelante de responsabilidad por estos. Como prueba de ello, la parte apelante presentó el *Contrato de Compraventa*[13] cuya tercera estipulación dispone:

> Manifiesta expresamente la PARTE COMPRADORA que ha inspeccionado y/o hecho un examen minucioso de la Propiedad y está completamente consciente del estado de condición actual, que tuvo la oportunidad de consultar con un especialista en inspección de propiedades, que la encuentra apta para el uso al que habrá de destinarla y la acepta y la adquiere por el precio de compraventa tal y como se encuentra ("as is"), incluyendo los muebles y/o enseres, según aplique, **por lo que la PARTE VENDEDORA no responde por los vicios ocultos y/o aparentes.**
> (Énfasis nuestro).

Sin embargo, aunque las partes pueden pactar un relevo de responsabilidad por daños por vicios ocultos no notificados a favor de la parte vendedora, esta sólo procede si existe un acuerdo válido y si la parte vendedora no conocía del vicio oculto no reportado. En el caso de marras, el TPI aceptó que la parte apelante tenía conocimiento del vicio oculto; esto por causa de la propia conducta de la parte apelante.

---

[13] Apéndice, *supra*, Anejo X, págs. 50-57.

En su *Demanda*,[14] KF Realty alegó que la parte apelante y el Sr. Fusaro, dueño del apartamento 3-A, habían tenido comunicaciones sobre una tubería causando problemas de filtración en su apartamento. En consecuencia, la parte apelante conocía de un problema de filtración cuando se firmó el *Contrato de Compraventa*. Aunque la parte apelante tuvo la oportunidad de presentar prueba de que no conocía de problema o de que le había informado a la parte compradora (KF Realty) sobre el mismo, esta reiteradamente incumplió con las órdenes del TPI, por lo que el 8 de septiembre de 2021, el TPI le anotó la rebeldía. En consecuencia, se aceptaron los hechos bien alegados por la parte demandante (KF Realty), incluyendo el hecho de que la parte apelante alegadamente conocía del vicio oculto y no se lo informó a KF Realty. Por lo tanto, la parte apelante no fue relevada de su responsabilidad.

Los últimos tres errores tratan sobre la apreciación de la prueba por parte del TPI y la imposición de sanciones a la parte apelante por temeridad. Por estar íntimamente relacionados a la discreción del foro de instancia, los atenderemos en conjunto.

Como hemos señalado, los foros de instancia merecen gran deferencia de parte de los tribunales apelativos sobre asuntos de la apreciación de la prueba y manejo del caso. Esto pues son aquellos los foros que están en posición para apreciar la prueba y hacer determinaciones sobre la credibilidad de los testimonios presentados en el juicio. Por lo tanto, los foros apelativos no debemos intervenir con las determinaciones del tribunal de instancia salvo exista pasión, prejuicio o parcialidad, o que este haya incurrido en craso abuso de discreción o en error manifiesto o de derecho.

En cuanto a la imposición de daños por la remodelación de la terraza del apartamento PH-6, el 10 de junio de 2022 el TPI celebró un

---

[14] *Íd.*, Anejo V, págs. 31-38.

juicio en Rebeldía. Tuvo ante su consideración el testimonio de la señora Kristina Fabregas Vázquez, representante autorizada de KF Realty, y varios documentos que consideró como prueba documental. Siendo una *Sentencia en Rebeldía*, el TPI no estuvo obligado a consignar los hechos probados y conclusiones de derecho. Regla 42.2 de Procedimiento Civil, *supra*; R. Hernández Colón, *op. cit.*, pág. 420. Finalmente, el TPI determinó que la parte apelante incurrió en conducta temeraria al proceder con sus reclamaciones. Dicha determinación merece gran deferencia puesto que el TPI fue el foro que atendió a las partes y tuvo la responsabilidad de manejar el caso. Es el foro que estuvo en mejor posición para evaluar la conducta de las partes durante la tramitación del caso. Por lo tanto, no debemos intervenir en el ejercicio de su discreción salvo que medie craso abuso de discreción.

Luego de un análisis sosegado de la determinación del TPI, los argumentos de las partes y el derecho vigente, no existe razón para revocarlo. Nada en el expediente señala que el TPI haya incurrido en error manifiesto o craso abuso de su discreción. Tampoco surge que haya actuado con pasión, perjuicio o parcialidad. Por lo tanto, no existe un recurso que no sea confirmar la *Sentencia en Rebeldía*.

**IV.**

Por los fundamentos esbozados, confirmamos la *Sentencia en Rebeldía* dictada por el TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones