ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JESÚS MIRANDA GONZÁLEZ**<br><br>Apelante<br><br>v.<br><br>**PEDRO HERNÁNDEZ BERROA y OTROS**<br><br>Apelados | KLAN202300651 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.:<br>**BY2020CV02711**<br><br>Sobre:<br>Cobro de Dinero - Ordinario |

Panel integrado por su presidente el Juez Salgado Schwarz, el Juez Ronda Del Toro y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2024.

Comparece ante nos el señor Jesús Miranda González (Sr. Miranda o apelante), mediante recurso de *Apelación*, y nos solicita que revoquemos la *Sentencia*[2] dictada el 30 de junio de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En esta, el TPI declaró No Ha Lugar y desestimó la *Demanda*[3] presentada por la parte apelante, declaró Ha Lugar a la *Reconvención*[4] presentada por el señor Pedro Hernández Berroa (Sr. Hernández o apelado) y le impuso honorarios de abogado al Sr. Miranda.

Por los fundamentos que discutiremos a continuación confirmamos la *Sentencia* del TPI.

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución del Hon. Roberto Rodríguez Casillas.

[2] Apéndice del *Recurso de* Apelación, Anejo I, págs. 1-18. Notificada y archivada en autos el 30 de junio de 2024.

[3] *Íd.*, Anejo II, págs. 19-20.

[4] *Íd.*, Anejo III, págs. 21-24.

# I.

El caso de marras dimanó el 2 de septiembre de 2020, luego de que el Sr. Miranda presentó una *Demanda* en contra del Sr. Hernández por incumplimiento contractual y daños. El 14 de octubre de 2020, compareció el Sr. Hernández y levantó varias defensas afirmativas. Además, presentó una *Reconvención*, en la cual alegó que pese haber cumplido con las condiciones del contrato de arrendamiento pactado entre las partes, el Sr. Miranda le retuvo tanto el depósito del contrato de arrendamiento como unas maderas tratadas que le pertenecían al Sr. Hernández.

Luego de varios trámites procesales, el 30 de junio de 2023, el TPI dictó la *Sentencia* apelada. Tras un análisis de la totalidad de la prueba presentada, así como las comparecencias de las partes, el TPI resolvió a favor del Sr. Hernández.

Según las determinaciones de hechos del TPI, el Sr. Miranda es dueño de cuatro locales comerciales localizados en el municipio de Corozal que tiene disponible para alquilar.[5] Tres de estos negocios comparten facilidades sanitarias y sus empleados se rotan diariamente para limpiar y dar mantenimiento a las facilidades compartidas. Originalmente, el Local Núm. 2 (Local) estaba arrendado por el señor Rey Leonel Padilla. Este le vendió la llave del Local al Sr. Hernández, para que continuara la operación y manejo del negocio.[6]

En dos ocasiones, el Sr. Hernández renovó el *Contrato de Arrendamiento*[7] del Local con el Sr. Miranda. En dicho negocio

---

[5] *Íd.*, Anejo I, pág. 5.
[6] *Íd.*, pág. 6.
[7] *Íd.*, Anejo VI, págs. 36-41. (Según los escritos que obran en el expediente, el primer *Contrato de Arrendamiento*, notarizado el 19 de noviembre de 2016, no fue presentado como prueba por las partes, por lo que no obra en autos. Sin embargo, las partes presentaron el segundo *Contrato de Arrendamiento* que, aunque no está firmado, fechado ni notarizado, fue estipulado. Este segundo *Contrato* no es el último contrato entre las partes ni tampoco era el *Contrato* vigente en el momento de los hechos. El tercer *Contrato*, vigente al momento de los hechos, no obra en el expediente y no forma parte de la prueba desfilada durante el Juicio).

jurídico, las partes acordaron arrendar el Local a razón de $1,500 mensuales, con un depósito de $1,500. Durante su testimonio, el Sr. Miranda admitió que el Sr. Hernández prestó la fianza del *Contrato de Arrendamiento* del año 2016 y que **nunca le devolvió la fianza al Sr. Hernández**.[8] Según el *Contrato*:

> La cantidad [dada en depósito] se devolverá al arrendatario, una vez que se haya vencido la vigencia de este contrato y no se haya renovado el mismo, luego de descontar los gastos y/o reclamaciones que no se hayan pagado por los arrendatarios o por las reparaciones necesarias y no realizadas o daños en la propiedad objeto de este contrato.[9]

Luego de más de dos años operando el Local, el Sr. Hernández decidió no renovar el *Contrato*. Según la prueba aquilatada por el TPI, el Sr. Miranda le impuso una condición nueva a la renovación del *Contrato de Arrendamiento*. Este le exigió al Sr. Hernández que despidiera a su hijo quien había sido dejado a cargo de la administración del restaurante. Bajo su administración, el restaurante comenzó a perder clientela, que causó fricción con el Sr. Miranda.[10]

Según el testimonio del Sr. Miranda, este decidió no renovar el *Contrato* con el Sr. Hernández. Testificó haberle mostrado al Sr. Hernández un alegado video de seguridad en el cual su hijo había contaminado el pozo séptico al echarle desperdicios sólidos. Esto alegadamente ocasionó que el pozo dejara de percolar, razón por la cual, el Sr. Miranda tuvo que construir un nuevo pozo séptico. Sin embargo, **al TPI no le mereció credibilidad dicho testimonio**. Esto debido a que el Sr. Miranda nunca presentó como prueba el alegado video o fotografías demostrativas de que los alegados daños al pozo séptico fueron causados por el hijo del Sr. Hernández. También surge que el pozo estuvo en operación mucho antes de que

---

[8] *Íd.*, Anejo II, págs. 6-8.
[9] *Íd.*, Anejo VI, pág. 37.
[10] *Íd.*, Anejo II, pág. 8.

el Sr. Hernández alquilara el Local y este ya mostraba problemas de percolación, que no podían ser atribuibles al Sr. Hernández.[11] No se presentó prueba para acreditar que en el momento que el Sr. Hernández comenzó a alquilar el Local, el pozo séptico no tenía problemas preexistentes que afectaran su funcionamiento. En síntesis:

> El señor Miranda presentó diversas facturas sobre unos materiales adquiridos, tales como tubos, materiales eléctricos, materiales de construcción, barrillas, cemento y "PVC", que se utilizaron para reparar la tubería eléctrica, el pozo séptico y las facilidades sanitarias. **No se presentó evidencia sobre la existencia de dichos daños y de que en realidad se utilizaron los materiales para reparar el local núm. 2. El Tribunal no fue puesto en posición de determinar si es cierto lo declarado en especial cuando se ha demostrado en varias ocasiones la mendacidad del [Sr. Miranda]**.[12]

Como prueba de la mendacidad del Sr. Miranda, el TPI señaló que el Sr. Miranda reclamó una factura fechada del 30 de abril de 2019. Esta era por la compra de unos tubos para realizar unas reparaciones. Sin embargo, para esta fecha, el Sr. Hernández estaba ocupando el Local, por lo que el TPI determinó que el Sr. Miranda quería cobrar unos alegados materiales para efectuar una reparación al Local, aún ocupado, y antes de que el Sr. Hernández lo desalojara.[13]

En consecuencia, y luego de evaluar el expediente en su totalidad, el TPI dictó *Sentencia* en contra del Sr. Miranda. Desestimó la *Demanda* y determinó Ha Lugar a la *Reconvención* del Sr. Hernández únicamente en cuanto a la devolución del depósito de $1,500. Determinó que había ausencia total de prueba presentada en el juicio con relación a la reclamación sobre las maderas tratadas. Además, el TPI le impuso al Sr. Miranda $5,000

---

[11] *Íd.*, Anejo VI, pág. 38.
[12] *Íd.*, Anejo I, pág. 10. (Citas omitidas). (Énfasis nuestro).
[13] *Íd.*, pág. 11.

por honorarios de abogado al estimar que su conducta fue temeraria.

Inconforme con dicha determinación, y sin presentar una reconsideración ante el TPI, el 31 de julio de 2024, el Sr. Miranda presentó la *Apelación* ante nuestra consideración. En dicha comparecencia, señaló los siguientes errores:

1. **[ERRÓ] EL TPI EN LA APRECIACIÓN DE LA PRUEBA TESTIFICAL AL NO REALIZAR UN ANÁLISIS JUSTO Y BALANCEADO DE LA MISMA.**

2. **[ERRÓ] EL TPI AL DESESTIMAR LA DEMANDA EN COBRO POR REPARACIONES AL LOCAL.**

3. **[ERRÓ] EL TPI AL IMPONER HONORARIOS DE ABOGADO EN LAS CIRCUNSTANCIAS DE ESTE CASO.**

## II.

### A.

"[L]a sentencia que dicta un Juez de Primera Instancia es el producto final de un activo y complejo proceso forense". L. Rivera Román, *La apreciación de prueba en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones* en *Perspectivas en la práctica apelativa*, San Juan, Ediciones SITUM, 2018, pág. 101. Estas gozan de una presunción de corrección y la parte que impugne una determinación del Tribunal de Primera Instancia tiene el peso de la prueba para refutarla. *Íd.*; *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).

> [D]e ordinario, los tribunales apelativos **aceptamos como correctas las determinaciones de hechos de los tribunales de instancia, al igual que su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en sala**. Después de todo, **la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada**, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz. Por definición, un tribunal de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial.

*Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). (Énfasis nuestro).

Con relación a las determinaciones de hechos basadas en la prueba oral, la Regla 42.2 de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Sobre la deferencia debida a los tribunales de instancia, nuestro Tribunal Supremo ha reconocido que el juzgador de los hechos en primera instancia está en especial ventaja al hacer determinaciones de hechos y aquilatar la prueba testifical y las adjudicaciones de credibilidad. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. De Jesús Mercado*, 188 DPR 467, 477-478 (2013); *Pueblo v. Rosario Reyes*, 138 DPR 591, 598 (1995). "No obstante, los tribunales apelativos se encuentran en igual posición que el tribunal de instancia para apreciar y evaluar las determinaciones de hecho basadas en la prueba documental". J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, 3ª ed. rev., 2023, pág. 354.

"[C]omo norma general, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza [el foro de instancia]". *Pueblo v. Rivera Maldonado*, *supra*, pág. 373. "Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro **únicamente** cuando existen circunstancias extraordinarias en las que **se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho**". *Íd.* (Énfasis nuestro).

Un tribunal actúa con pasión, prejuicio o parcialidad cuando está "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra*, pág. 782. Para determinar si el tribunal de instancia actuó con pasión, prejuicio o parcialidad, no estamos limitados a lo sucedido durante el juicio, sino podemos tomar en consideración conductas previas y posteriores a la determinación judicial. *Íd.*, pág. 788.

Para determinar si un tribunal incurrió en craso abuso de discreción, se deben considerar los siguientes criterios:

> [E]l juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente.
>
> *Pueblo v. Custodio Colón*, 192 DPR 567, 589 (2015).

"Por último, un juzgador incurre en error manifiesto que justifica la intervención del tribunal apelativo cuando 'la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble'". *Pueblo v. Rivera Maldonado, supra*, pág. 374. (citando a *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002)).

**B.**

En cuanto a la temeridad, nuestro Tribunal Supremo ha resuelto que esta implica "aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias". *Oliveras, Inc. v. Universal Ins. Co.*, 141 DPR 900, 935 (1995). La conducta temeraria consiste en:

> [U]na actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces [exorbitante] para su peculio.
> H. Sánchez, *Rebelde Sin Costas*, 4(2) Boletín Judicial 14 (1982).

Por lo tanto, nuestro ordenamiento jurídico provee mecanismos para disuadir la conducta temeraria. Uno de estos es la Regla 44.1(d) de Procedimiento Civil, *supra*, que permite la imposición de honorarios de abogado a la parte que haya procedido con temeridad o frivolidad en el proceso. Dicha determinación descansa en la sana discreción del tribunal sentenciador. R, Hernández Colón, *op. cit.*, esc. 4, pág. 436. Tan amplia es la discreción del tribunal sentenciador que este "puede tomar en consideración la conducta observada por las partes antes de presentarse la acción judicial y antes de ser emplazada la parte demandada". *Íd.*, pág. 437.

Existirá temeridad cuando: 1) en la contestación a la demanda se niegue responsabilidad, pero ésta se acepte posteriormente; 2) la parte demandada se defienda injustificadamente de la acción; 3) se crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante, en lugar de admitir responsabilidad y limitar la controversia a la fijación de la cantidad reclamada; 4) el demandado se arriesgue a litigar un caso del que surja a todas luces su responsabilidad; o, 5) cuando se niegue un hecho cuya certeza le consta a quien hace la alegación. *O.E.G. v. Román*, 159 DPR 401 (2003); *Dominguez v. GA Life*, 157 DPR 690 (2002). Cuando un tribunal de instancia estime que exista temeridad, este viene obligado a imponer honorarios. Los foros apelativos, en consecuencia, **solo deben intervenir con la imposición de honorarios cuando medie un claro abuso de esa discreción**. *Meléndez Vega v. El Vocero*, 189 DPR 123, 211 (2013).

**C.**

La obligación "consiste en el deber de realizar una prestación. Esta es la conducta que ha de seguir el obligado para extinguir la obligación mediante el correspondiente acto de cumplimiento". J. Puig Brutau, *Compendio de derecho civil*, 2ª ed. rev., Barcelona, Ed. Bosch, 1994, Vol. II, pág. 1. De particular interés a nuestro análisis son las obligaciones que nacen de los contratos.

Un contrato es el negocio jurídico entre dos o más personas donde las partes contratantes se obligan a dar, hacer o no hacer una cosa. El Artículo 1044 del Código Civil de 1930,[14] (30 LPRA sec. 2994) (Código Civil de 1930) dispone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de los mismos". Los contratantes pueden exigir el cumplimiento específico con las cláusulas y condiciones pactadas. *Casera Foods v. E.L.A.*, 108 DPR 850 (1979). "Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Código Civil de 1930, *supra*, Art. 1233. Los contratantes se "obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". *Íd.*, Art. 1210.

Cuando una parte no cumple lo pactado, incurre en incumplimiento contractual. "[L]a responsabilidad contractual se basa 'en el quebrantamiento de un deber que surge de un contrato expreso o implícito'. A través de las acciones *ex contractu* se vindican los daños acaecidos como consecuencia del incumplimiento de obligaciones previamente pactadas". *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193

---

[14] Aunque el Código Civil de 1930 fue derogado tras la aprobación del Código Civil de 2020, Ley Núm. 55-2020, (31 LPRA sec. 5311 *et seq.*), hacemos referencia al Código Civil de 1930 puesto que estaba vigente cuando se constituyó el contrato de arrendamiento.

DPR 38, 56 (2015) (citando a *Soc. de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998)).

El tratadista Puig Brutau define el daño como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". J. Puig Brutau, *op. cit.*, pág. 627. (Citas omitidas). Nuestro ordenamiento jurídico reconoce dos clases de daños, los especiales y los generales. *Nieves Díaz v. González Massas*, 178 DPR 820, 845 (2010). "Los daños especiales se refieren a toda aquella pérdida que recae sobre los bienes objetivos, pues estos daños admiten una valoración económica debido a que impactan directamente el patrimonio del perjudicado. Mientras, los daños generales son los infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado". *Íd.* (Citas omitidas). Por lo tanto, el concepto de daños en nuestra jurisdicción es amplio y general, por lo que los tribunales no deben crear impedimentos indebidos al reclamo de daños y sólo aplicar aquellos reconocidos por ley. Lo importante para que prospere una alegación de daños es que la parte que los reclame los logre probar en un tribunal. Si no se presenta prueba alguna sobre uno de los elementos de la acción, no procede la reclamación.

Nuestro sistema de derecho es de carácter adversativo y de naturaleza rogada. En consecuencia, prevalece el principio elemental de que le toca al reclamante en un pleito el peso de la prueba con respecto a sus alegaciones. Es la obligación fundamental de la parte reclamante poner al tribunal en condiciones para determinar los daños sufridos por la conducta de la parte demandada. *Matos v. Adm. Servs. Médicos de P.R.*, 118 DPR 567 (1987); *Cotto v. C.M. Ins. Co.*, 116 DPR 644 (1985); *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 DPR 527 (1981). Para esto, es indispensable que presente prueba sobre los daños y que estos hayan sido causados por la conducta del demandado. Esto sea por incumplimiento contractual o por

negligencia, puesto que los tribunales están facultados para conceder cualquier remedio que en derecho proceda, aunque las partes no lo hayan alegado. Reglas 42.4 y 70 de Procedimiento Civil, 32 LPRA Ap. V; *Negrón Rivera y Bonilla, Ex Parte*, 120 DPR 61, 72 (1987). "[A]unque el nuestro es un sistema adversativo de derecho rogado, un tribunal no tiene que conceder lo que se le pide; su deber es conceder sólo lo que en derecho proceda". *P.P.D. v. Gobernador II*, 139 DPR 984, 1004 (1996) (Voto concurrente del Juez Asociado Señor Negrón García).

**III.**

Luego de esbozar el derecho aplicable, nos encontramos en posición para atender los errores planteados.

En primer lugar, debemos atender si el TPI erró al desestimar la demanda de cobro por reparaciones al Local. Para prevalecer en su reclamación, la parte apelante tenía la obligación de probar los daños sufridos y que estos fueron causados por la conducta del Sr. Hernández.

En el juicio, el Sr. Miranda testificó sobre la alegada existencia de un video que mostraba que el Sr. Hernández y su hijo "abrieron el pozo muro, le tiraron plástico, le tiraron tierra, le tiraron palos, contaminantes y... y el pozo muro sufrió daños [...]".[15] También testificó que tuvo que incurrir en más de $11,000 en gastos para reparar el Local.[16] El Sr. Miranda incluyó como prueba de los gastos las facturas de compras de materiales y mejoras realizadas. Todo estos para remediar los daños alegadamente causados por el Sr. Hernández y su hijo.

No obstante, lo que testificó, el Sr. Miranda no presentó prueba mostrando que la parte apelada causó los daños. En el *Contrato de Arrendamiento* estipulado, surge que el pozo séptico ya tenía problemas de percolación. También surge que las áreas

---

[15] *Transcripción del Juicio de 17 de julio de 2023*, pág. 13.
[16] *Íd.*, pág. 14.

sanitarias eran compartidas entre tres negocios, por lo que no existe certeza, sin prueba del alegado video de seguridad, que fue el Sr. Hernández quien ocasionó los daños. Al no presentar la prueba necesaria para determinar la causa de los daños, el Sr. Miranda no puso el TPI en posición para resolver a favor de su reclamación. Como hemos destacado, si no se presenta prueba alguna sobre uno de los elementos de la acción, como sucedió aquí con respecto a la causa de los alegados daños sufridos, no procede la reclamación. En consecuencia, no erró el TPI al desestimar la reclamación del Sr. Miranda.

Como segundo error, la parte apelante señala que el TPI erró en la apreciación de la prueba testifical por no realizar un análisis justo y balanceado. El expediente demuestra lo contrario.

Los foros apelativos le merecen gran deferencia a los tribunales de instancia en las determinaciones de hechos, la apreciación de la prueba oral y las adjudicaciones de credibilidad que merecen los testigos. Estas únicamente deben ser revocadas o alteradas cuando los tribunales actúen con pasión, prejuicio o parcialidad, o hayan incurrido en error manifiesto de derecho o abuso de discreción. Para llegar a estas conclusiones, este Tribunal puede considerar la prueba presentada, la transcripción del juicio, el derecho aplicable y la conducta previa o posterior a la determinación del TPI.

La única prueba que el TPI tuvo ante su consideración para adjudicar la causa de los daños fue el testimonio del Sr. Miranda. Por lo tanto, su credibilidad era lo único que tenía el Sr. Miranda para probar su caso. Sin embargo, al TPI no le mereció credibilidad su testimonio. Hemos señalado que los foros de instancia están en una posición privilegiada al momento de dirimir los asuntos de credibilidad. Sólo impondremos nuestros criterios sobre el del juzgador de instancia si hubo pasión, prejuicio o parcialidad.

Una lectura sucinta de la transcripción del juicio demuestra que no mediaron los factores antes mencionados y que las determinaciones de credibilidad del TPI no fueron irrazonables. En primer lugar, durante el contrainterrogatorio del Sr. Miranda, surge que este no pudo recordar el mes que ocurrieron hechos particulares. La confusión no trata de un mes para otro, sino fechas cinco meses apartes.[17] El Sr. Miranda también testificó que el Sr. Hernández no le hizo el pago de $1,500 en calidad de depósito o fianza, aunque este hecho fue estipulado por las partes;[18] alegó que este pago fue hecho como pago del primer mes del arrendamiento.[19] No produjo prueba sobre esta alegación. Con relación a los gastos incurridos, aunque el Sr. Miranda había reclamado los mismos para reparar los daños alegadamente causados por el Sr. Hernández, en el contrainterrogatorio, surgió que varios de estos gastos se realizaron cuando el Sr. Hernández aún ocupaba el Local.[20] Este análisis va dirigido a demostrar que la determinación del TPI sobre la credibilidad del testimonio no es una infundada. Al contrario, el TPI consideró el testimonio del Sr. Miranda y detectó inconsistencias en el mismo. Por lo tanto, este Tribunal no tiene razón para intervenir en la apreciación de las determinaciones de credibilidad hechas por el TPI; no se cometió el error.

Finalmente, el Sr. Miranda alega que el TPI erró al imponerle honorarios de abogado. No le asiste la razón.

Los foros apelativos sólo deben intervenir con determinaciones de temeridad e imposiciones de honorarios cuando medie un claro abuso de discreción. Esto no surge del expediente. El Sr. Miranda presentó la *Demanda* que eventualmente dio lugar a

---

[17] *Íd.*, págs. 87-88.
[18] *Informe Preliminar de Conferencia con Antelación al Juicio*, pág. 3. ("El demandado arrendó al demandante a razón de un canon de renta de $1,500.00 mensuales y dando en depósito la cantidad de $1,500.00).
[19] *Transcripción, supra*, 78-79.
[20] *Íd.*, págs. 89-99.

esta *Apelación*. Sin embargo, la misma parte demandante/apelante no presentó la prueba necesaria para probar sus alegaciones. No olvidemos que la determinación de temeridad descansa en la sana discreción del tribunal sentenciador. R, Hernández Colón, *op. cit.*, esc. 4, pág. 436. Tan amplia es la discreción del tribunal sentenciador que este "puede tomar en consideración la conducta observada por las partes antes de presentarse la acción judicial y antes de ser emplazada la parte demandada". *Íd.*, pág. 437. Es el TPI quien tiene ante sí el manejo y administración del caso y quien presencia la conducta de las partes. En consecuencia, no vemos razón para intervenir con esta determinación del TPI.

**IV.**

Por las razones discutidas, confirmamos la *Sentencia* del TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones